## Heineman's Appeal.

1. Under the provisions of the Acts of April 8th 1833 and April 20th 1869, whatever disposition a testator makes of his real estate, whether specific or general, it passes to his devisees, subject to the charge in favor of the widow of one-third interest therein for her life; and where a testator specifically devised the rents of certain properties to his five children, and the widow elected not to take under testator's will, one-third of the rents were properly awarded to the widow and each fifth share was rightly reduced accordingly.

2. Under the provisions of the eleventh section of the Act of April 11th 1848, if the widow elects not to take under her husband's will she is entitled to one-third of his personal estate absolutely, and of this it is not in the power of the husband to deprive her. If, in case of such election, there is not enough to pay legacies, they must abate.

3. Testator in his will provided that one-fifth part of all sales of his property made should be invested for his daughter. It was contended that she was thereby entitled to one-fifth of the entire personal estate of testator. *Held*, that these words must be so construed as limiting her to that portion of the estate only which arose from the sales of property.

4. Hunter's Estate, 6 Barr 97, and German *v.* German, 3 Casey 116, followed.

November 7th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ.   STERRETT and GREEN, JJ., absent.

Appeal from the Orphans' Court of *Allegheny county:* Of October and November Term 1879, No. 301.

Appeal of Matilda Heineman, from the decree of the court in the matter of the exceptions to the account of the executors of Louis Heineman, deceased.

Louis Heineman died February 28th 1877.   He left a will dated February 22d 1877, which contained the following provisions:

"First. I direct all my just debts and funeral expenses to be fully paid and satisfied by my executors, hereinafter named, as soon as conveniently may be after my decease

"Second. I give and bequeath to my wife Catharine so much of my household furniture, beds, bedding and such other articles, useful or ornamental, contained in my house or residence on Troy Hill, as she may select, to the value of five hundred dollars, according to the appraised value thereof, to be made by appraisers to be selected by my said executors, hereinafter named.   And I further give and bequeath unto my said wife, the sum of twelve hundred dollars, to be paid to her by my said executors yearly and every year during her natural life, for her maintenance and support.   All which legacies to my said wife, I do declare to be in lieu and stead of her dower at common law.

"Third. I devise and bequeath to my executors, hereinafter named, the store-house and lot situate on Fifth avenue, in the city of Pittsburgh, in trust, however, for the following uses and pur-

poses, and no others, to wit: To rent the same at such rent or rents and for such term or terms of years as they may deem best, until the term of twenty years after my death shall have fully expired and ended, and after paying all expenses, taxes and other charges against the same, to divide the residue of the rents equally between my five children, as follows: One share to my daughter, Matilda Heineman, to be paid to her without power of anticipation or liability to attachment, and free from the control of her husband, and in case she should die before the expiration of said term of twenty years, her share of said rents shall be paid to her children.

"Fourth. I direct and empower my said executors, hereinafter named, to sell all the rest, residue and remainder of my estate, real, personal and mixed, of what nature or kind soever, and wheresoever the same may be at the time of my death, for such price or prices, either together or in parcels, and on such terms as they may deem best, and to execute and deliver good and sufficient deed or deeds therefor, to the purchaser or purchasers thereof.

"Fifth. I direct and empower my said executors, hereinafter named, to sell the said store-house and lot on Fifth avenue, in the city of Pittsburgh, as soon after the expiration of said term of twenty years after my death as they can obtain a satisfactory price therefor, and to execute and deliver a good and sufficient deed therefor to the purchaser or purchasers thereof.

"Sixth. I direct my said executors, hereinafter named, to invest the one-fifth part of the proceeds of all sales of my property made, in such securities as they may deem best, with power to sell, change, alter, renew and re-invest the proceeds of the same in other securities from time to time, the income thereof to be paid to my said daughter, Matilda Heineman, during her natural life, free from the control of her husband, without power of anticipation, and free from liability to attachment, and upon her death the principal thereof to be equally divided among her children.

"Seventh. All the rest, residue and remainder of my estate, not otherwise hereinbefore disposed of, I give and bequeath unto my four sons—Richard Alexander, Charles, Albert and Edwin Alonzo—share and share alike, to their heirs and assigns for ever.

"And lastly, I hereby nominate, constitute and appoint my beloved son, Charles Heineman, and my nephew, Augustus R. Heineman, to be the executors of this my last will and testament."

Testator's real estate consisted of a valuable building, store-room, offices, &c., situate on Fifth avenue, between Wood and Market streets, Pittsburgh; and his residence on Troy Hill, back of Allegheny city. He had considerable personal property, consisting of stocks of various kinds, &c.

The executors took charge of the assets, and collected the rents and dividends until the 19th of April 1878, when they sold the stocks at auction. Among the stocks sold were eight shares of

the capital stock of the Germania Savings Bank, of the par value of $1000 a share paid up.　These shares were sold at the auction at $100 a share.　They had been appraised and returned in the inventory at $800 a share, and in filing their account the executors claimed credit for the difference, $5600, between the appraised value of the stock and what it sold for.　Mrs. Heineman excepted to this, and claimed that the stock had been sacrificed and sold for a nominal price without due notice to her.

The executors filed their account in the register's office on May 3d 1878.　It was presented for approval in the Orphans' Court on June 3d 1878, and exceptions were then filed on part of Mrs. Heineman.　Many of these exceptions were sustained and the account surcharged with $6565.

The court found there were $22,309.66 in the hands of the executors for distribution, and dismissed the exceptions, and made a decree as follows:

First. That Catharine Heineman, widow of the testator, has refused to accept the provisions made for her in his will, and having elected to take under the intestate laws of the Commonwealth, she is entitled in addition to the personal property, appraised at $300, and set apart to her, to one-third the proceeds of the personal property and rents collected after the payment of debts, expenses of administration, insurance, repairs, &c., and that said one-third is $7436.55; Second. That under the trust created by the 3d clause of the will, the accountants have received rents, less expenses, taxes, insurance and repairs, amounting to $3297.67; one-third of which is payable to Catharine Heineman, widow, and the residue is to be divided equally among the testator's five children; Third. That under the trust created by the 4th and 6th clauses of the will, accountants have received proceeds of sales and household goods, &c., less expenses, amounting in all to $8646.06; one-fifth of which, amounting to $1729.21, is to be invested as directed by the will, in trust for Mrs. Matilda Heineman, less her share of costs of audit, &c.; and Fourth, $3176.05 was declared to be the amount to which each of the four remaining legatees were entitled.

From this decree Mrs. Heineman took this appeal, and alleged, inter alia, that the court erred,

1. In not surcharging the account with the sum of $5600, the difference between the appraised value of the stock of the Germania Savings Bank and what it was sold for at the auction on the 19th of April 1878.

3. In its construction of the third clause of the said will, and in holding that Matilda Heineman was only entitled to one-fifth of the two-thirds of the net income from the rents of the Fifth avenue property.

4. In the construction of the sixth clause of said will, and in

11 Norris—7

holding that Matilda Heineman was only entitled to have invested for her share the one-fifth of the two-thirds of the proceeds of the property mentioned.

5. In not ruling and holding that under said will, as Mrs. Heineman was deprived of one-third of her share of the rents of the Fifth avenue property by reason of the widow's refusing to take under the will, that therefore she, Mrs. Heineman, was entitled to be reimbursed out of the amount, $1200 per annum, set apart by said will for the support of the widow.

*Barton & Sons*, for appellant.—At the sale on April 19th 1878, there was no bid on the stock, and therefore it was knocked down for the widow and children at a nominal sum; and if this decree is to stand, it is gone for ever from the control of these executors, and the interest of Mrs. Heineman is lost from the control of her trustees. The mother's election was Matilda's loss and the brothers' gain. Under the will Matilda got her one-fifth clear of her mother's claim. Under the intestate laws her income is reduced one-third. The construction contended for makes Matilda take the income or interest of one-fifth of two-thirds of $1200 a year, and surrender one-third of her entire income both from rents and interest on her trust investment. The sons are relieved from this charge of $1200 per annum, and get back four-fifths of it, and in lieu thereof pay the mother one-third of their share of the rents.

*Kennedy & Doty*, for appellees.—The stock of the Germania Savings Bank was sold, as were all other stocks and property, by the executors at public sale, after due public notice. The net rents, after deducting all expenses, taxes and charges against the same, are to be divided equally amongst the five children; Mrs. Heineman to receive one share, not one-fifth part as provided in the sixth clause of the will. The widow having declined to accept under the will, and elected to take under the intestate laws, her dower or interest became a "charge" against the rents of the property, and must be deducted before giving Mrs. Heineman or either of the testator's children, her or his "one share of the residue."

The court properly held that Mrs. Heineman did not participate in the distribution of the cash and assets representing the same as cash. Sales are not appropriate to cash, debts or claims, and similar assets. This doctrine is distinctly enunciated in almost these exact words, in McGlaughlin's Executors *v.* McGlaughlin's Administrators, 12 Harris 20; Hunter's Estate, 6 Barr 97; German *v.* German, 3 Casey 116; Myers's Appeal, 12 Wright 26; Bredlinger's Appeal, 2 Grant 461

Chief Justice SHARSWOOD delivered the opinion of the court, November 17th, 1879.

We find nothing to correct in the decree of the learned court below. By the Act of Assembly of April 20th 1869, Pamph. L. 77, it is provided that, " in case any person has died, or shall hereafter die, leaving a widow and last will and testament, and such widow shall elect not to take under the will, in lieu of dower at common law as heretofore, she shall be entitled to such interest in the real estate of her deceased husband as the widows of decedents dying intestate are entitled to under the existing laws of this Commonwealth." By the Act of April 8th 1833, Pamph. L. 316, " where such intestate shall leave a widow and issue, the widow shall be entitled to one-third of the real estate for the term of her life." It is evident that whatever disposition a testator may make of his real estate, whether specific or general, it passes to his devisees subject to the charge in favor of the widow of one-third interest therein for her life. It was strictly right then to award to the widow one-third of the rents of the store-house and lot on Fifth avenue in Pittsburgh, and the shares of the five children to whom the rents were specifically devised, were rightly reduced accordingly, namely, each one-fifth of the residue after deducting the widow's share.

By the eleventh section of the Act of April 11th 1848, Pamph. L. 537, it is in like manner provided that, in case that the widow elects not to take under the last will and testament of her husband, she shall be entitled to her share of his personal estate under the intestate laws, that is, to one-third thereof absolutely. Of this it is not in the power of the husband to deprive her. But evidently he can dispose of the remaining two-thirds. If, therefore, after paying the widow one-third of the residue of his estate after debts, funeral expenses and the costs of administration, sufficient remains to satisfy his legacies, they are to be paid as provided by him, and the balance goes to his residuary legatees, if there is a residuary bequest, if not, then to the next of kin. If there is not enough to pay all the legacies they must abate according to the principles upon which, in other cases of a deficiency of assets, such abatement takes place. In Gallagher's Estate, 26 P. F. Smith 296, we were called upon to consider the effect of an election by the widow to take against the will of her husband. It was there said : " The election of the widow does not destroy the right of the decedent to make a will and appoint an executor. The entire personal estate, bequeathed or not, vests in the executor in trust for administration and distribution : First. To pay debts and other legal claims. The widow electing to take under the will, has such a claim of which the decedent could not deprive her as he might deprive his next of kin of all claim, and give the entire residue to strangers. Over that residue he has entire power ; he can carve it out and distribute it as he pleases, and in what order he pleases. His general and specific legacies must first be paid, and then if there is any-

[Heineman's Appeal.]

thing left it goes to the residue." It is clear then that the award of one-fifth of the proceeds of all sales to the appellant was right. Had it been as the fourth exception supposes, only one-fifth of two-thirds, it would certainly have been wrong, but that exception was not true in point of fact. The decree finds that under the trust created by the fourth and sixth clauses of the will the accountants have received proceeds of sales and household goods, &c., less expenses amounting in all to $8646.06. One-fifth of which, amounting to $1729.21, is to be invested as directed by the will in trust for Mrs. Matilda Heineman. The learned counsel for the appellant argued earnestly that, under the sixth clause of the will she was entitled to one-fifth of the entire personal estate. But the words restricting her to the proceeds of sales of property must be construed as limiting her to that portion only of the estate as was ruled in Hunter's Estate, 6 Barr 97; German *v.* German, 3 Casey 116. Another position should be noticed, that as the appellant was deprived by the election of the widow of one-third of her share of the rent of the Fifth avenue property, she was entitled to be reimbursed out of the amount of the annuity of $1200 set apart by the will for the widow. How this was to be worked out, or out of what fund it is to come, has not been explained. In truth the simple rule is that, in these cases, whatever bequest to or provision is made for the widow in the will, is to be considered as if it did not exist. We think the learned court were right in not surcharging the executors with the stock of the Germania Savings Bank. It was sold at public sale, and we see no evidence of fraud in the transaction.

> Decree affirmed, and appeal dismissed at the costs of the appellant.