Thelma **KATZMAN**, Appellant,

v.

Lillian **HOFFMAN**, Arnold **Blumberg**, and Benjamin **Sork**.

No. 12033.

United States Court of Appeals Third Circuit.

Argued Dec. 6, 1956.

Decided March 25, 1957.

Charles Polis, Philadelphia, Pa. (Philip S. Polis, Philadelphia, Pa., on the brief), for appellant.

John F. Thaete, Philadelphia, Pa. (Walter B. Gibbons, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, KALODNER, Circuit Judge, and KRAFT, District Judge.

BIGGS, Chief Judge.

Jacob Katzman died April 24, 1950. Under his will he specifically devised the premises known as 2117 Spruce Street to the defendant, Lillian Hoffman, his daughter by a previous marriage. The devise was subject to the right of his wife, Thelma Katzman, to occupy the second floor apartment of the premises free of rent for a period of two years from the date of his death. In addition to the right of occupancy, Thelma Katzman received certain bequests under his will.

Thelma Katzman filed an election to take against Jacob's will. The executors of the Katzman will filed their account, and an audit was had before the Orphans' Court of Philadelphia County. There was produced at the audit an antenuptial agreement between Thelma and Jacob Katzman. By this agreement Thelma released any right or claim on Jacob's estate except to the extent provided in the agreement. It was stipulated at the audit that on the day the antenuptial agreement was executed Jacob Katzman had clear assets of approximately $100,-000. The Orphans' Court found that the agreement was binding as to $48,000 worth of those assets, but not binding as to the remainder of Jacob's assets, one-half of which were allotted to Thelma as her intestate share.

A schedule of distribution was filed in the Orphans' Court on December 28, 1951. The court directed that the intestate share be paid to Thelma, "Less value of 20 months' occupancy of second floor apartment at 2117 Spruce St. at $100 per month," or $2,000. There was no objection to the account and both Thelma Katzman and Lillian Hoffman approved the schedule of distribution as authorized by the court.

Following the approval of the schedule of distribution Thelma requested and received permission of Lillian Hoffman to remain in the second floor apartment until March 31, 1952. Thelma paid $100 per month for the months of January, February and March of 1952. She continued to occupy the premises after March 1952, and continued to pay $100 per month. All money was paid to the defendants, Blumberg and Sork, who were Trustees for Lillian Hoffman under Jacob Katzman's will.

In March 1952 Lillian Hoffman wrote to Thelma Katzman stating that she hoped that Thelma would abide by her agreement to vacate the premises by March 31, 1952. It became apparent by the end of March that Thelma was not going to vacate the second floor apartment and thereafter Lillian Hoffman on several occasions requested Thelma Katzman to quit the premises. Thelma Katzman did not do so.

In January 1953 Thelma Katzman instituted the suit at bar and the court below granted a motion by the defendants for summary judgment insofar· as the claim related to payments made prior to May 1, 1952, but reserved for trial the issue of whether a landlord and tenant relationship existed after May 1, 1952. The question reserved was subsequently

tried to the court.[1] The court dismissed the complaint as to all the defendants. This appeal followed.

It is undisputed that from May 1, 1950 to April 30, 1953, the months for which the plaintiff claims overcharge, the Rent Regulations for Housing were in effect. See 12 Fed.Reg. 4331 as amended. In accordance with these regulations the maximum legal rent for the second floor apartment at 2117 Spruce Street was the registered rent of sixty-five dollars ($65). Three periods are involved here.[2] The first period is from May 1, 1950 to December 31, 1951, the period covered by the $2,000 awarded under the schedule of distribution of the Orphans' Court. The second period is from January 1, 1952 to March 31, 1952 during which the plaintiff resided at the premises with the consent of the defendants. The third period is from April 1, 1952 to April 30, 1953, which includes the remaining months of the plaintiff's total claim.

 The Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix § 1884 et seq. and the regulations promulgated thereunder are not applicable unless a landlord and tenant relationship exists. There was no such relationship existing between Lillian Hoffman and Thelma Katzman during the period from May 1, 1950 to December 31, 1951, the first period referred to above. By electing to take against the will of Jacob Katzman, Thelma Katzman became entitled to one-half of the property in Jacob's estate. Section 8(b) of Pennsylvania Wills Act of 1947, as

amended, 20 P.S. § 180.8(b). Thelma's interest attached to all the real estate, including that which is the subject matter of this case. Heineman's Appeal, 1879, 92 Pa. 95. Thelma Katzman and Lillian Hoffman became tenants in common of the premises 2117 Spruce Street. These facts were before the Orphans' Court of Philadelphia County. That court had before it the issues presented by the settlement and distribution of Jacob's estate. The $2,000 allocated to Lillian Hoffman as the value of the occupancy of the second floor apartment by Thelma Katzman was not rent. It was employed by the Orphans' Court as one of the considerations whereby the intestate shares in Jacob Katzman's estate were determined. Assuming *arguendo* that the distribution was not according to law, nonetheless this is not the court in which to assert an objection to the distribution. We cannot permit a collateral attack to be made here on an award adjudicated by the Orphans' Court under the pretense of applying the Housing and Rent Act.

 As to the second time period, the period from January 1, 1952 to March 31, 1952, it must be noted that during that period Lillian Hoffman was the sole owner of the building in which the apartment was located by reason of the Orphans' Court award.[3] Thelma Katzman requested and received permission to remain in the apartment until March 31, 1952 with the understanding that she would vacate it on that date and would pay $100 per month for use and occupancy.[4] At that point a landlord and tenant relationship existed.

---

1. The action was tried on the basis of alleged overcharges from May 1, 1952 to April 30, 1953. Although the plaintiff brought this action on January 21, 1953, she remained in the apartment until July 3, 1953. The plaintiff continued to pay $100 per month to April 30, 1953.

2. The district court divided the case into two time periods: May 1, 1950 to April 30, 1952; and May 1, 1952 to April 30, 1953. The reason for that division was that the court found that no landlord and tenant relationship existed during the

first period, but that a letter sent to the plaintiff April 21, 1952 may have established such relationship as to the second period. The summary judgment related to the first period, the trial to the second period.

3. She did not receive record title until March 14, 1952 when an appropriate excerpt from the Schedule of Distribution was filed in the Recorder of Deeds Office in Philadelphia County.

4. Paragraph 13 of the Affidavit of Lillian Hoffman, May 11, 1953.

In re Wilson's Estate, 1944, 349 Pa. 646, 649, 37 A.2d 709, 710. When Lillian Hoffman demanded and received $100 per month she was a landlord. The type of tenancy under which Thelma Katzman remained in the premises is far from clear but we are of the view that it was one for a definite period, for three months, the rent being payable monthly. Since a landlord and tenant relationship existed during this period, and since the rent demanded and received by Lillian Hoffman exceeded the maximum prescribed by the rent regulations, Sec. 205 of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix § 1895 was violated.[5] We do not agree with the district court's finding that Thelma Katzman was a trespasser during this period for it is clear that she had permission to remain on the premises.

 When Thelma Katzman refused to abide by her agreement to vacate the premises on March 31, 1952, she became a holdover tenant. Thus began the third time period, April 1, 1952 to April 30, 1953. Lillian Hoffman had the option of treating Thelma Katzman as a trespasser or a tenant after March 31, 1952. See Driebe v. Davis, 1953, 86 Pa.Dist. & Co.R. 552, 555. She elected to treat Thelma Katzman as a tenant by accepting thirteen months rent.[6] While Lillian Hoffman protested the holdover, she nonetheless accepted rent and failed to institute an ejectment action. The type of tenancy that existed during the holdover period was a month-to-month tenancy. Driebe v. Davis, supra, at page 555. There was no intent manifested by either Lillian Hoffman or Thelma Katzman to renew the tenancy for a definite three months term, and the monthly payment and receipt of rent point to a monthly periodic tenancy. Compare Farbman v. Meyers, Phila.Co.1920, 29 Dist. 713.

As the landlord and tenant relationship continued to exist for this third period, and as the rent demanded and received exceeded the maximum amount prescribed by the rent regulations, Sec. 205 of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix § 1895, continued to be violated.

 The court below had before it as an issue the liability of the alleged collecting agents of Lillian Hoffman, the defendants Blumberg and Sork. The court gave judgments in favor of these defendants respectively on the motion for summary judgment as to the first period as found by it and on the issue tried to the court as to the second period found by it. See note 2, supra. The basis for the judgments apparently was the finding by the court below that no landlord and tenant relationship existed. Since we have determined that such a relationship did exist and since the complaint states a cause of action against Blumberg and Sork, on remand the liability or lack of liability of these defendants must be determined in accordance with the law and evidence. For example an agent collecting an overcharge may be jointly and severally liable for violating the Act. See United States v. Waters, 7 Cir., 1952, 194 F.2d 866; Burton v. Katzman, 7 Cir., 1951, 187 F.2d 703; United States v. E. F. Metzner Co., D.C.W.D.Ky.1951, 96 F.Supp. 792.

The court below, as we have stated, granted summary judgment in favor of the defendants as to the claim relating to the payments made by Thelma Katzman prior to May 1, 1952. This judgment was erroneous since the first period, the tenants-in-common period, came to an end on December 31, 1951. While

---

5. Rent for January 1952 was not paid until February 6, 1953. Such being the case the violation for January 1952 was not barred by the one year limitation contained in Sec. 205(c) of the Housing and Rent Acts of 1947, as amended, 50 U.S.

C.A.Appendix, § 1895(c). This suit was instituted January 21, 1953.

6. The finding by the court below that the money paid was not rent but was liquidated damages for illegal occupancy is untenable.

there was no liability until a landlord and tenant relationship existed, such a relationship came into existence on January 1, 1952. Consequently this judgment will be reversed. As to the judgment on the issue tried to the court, it is obvious that the trial court erroneously concluded that no landlord and tenant relationship existed. Accordingly that judgment also will be reversed. The cause will be remanded with the direction to proceed in conformity with this opinion.