## ESTATE OF SAMUEL FERGUSON, DECEASED.

### APPEAL BY S. H. FERGUSON FROM THE ORPHANS' COURT OF ARMSTRONG COUNTY.

Argued October 13, 1890—Decided November 10, 1890.
[To be reported.]

1. Bequests, subordinate to a life-estate in the testator's widow, or payment of which is postponed by the will until her death, become presently payable upon her election to take under the intestate laws; as to its effect upon all claims under the will, such election is equivalent to the widow's death, unless the will manifests a contrary intent.

2. While equity will depart from the literal provisions of a will, in order to carry out a superior or preferred intent of the testator which would otherwise fail, such departure is never made except of necessity, and then only to the extent that the necessity requires: Young's App., 108 Pa. 17, considered and explained.

(a) After bequeathing his household furniture to his wife and devising to her certain realty for life, a testator directed that his other personal property, and certain other realty, be sold and the proceeds thereof invested, and that the income therefrom and the interest on all moneys, notes, etc., outstanding, should be received by his wife during her life.

(b) He then directed that at his wife's death all his property should be sold; bequeathed, out of the proceeds of such sale, $500 each to four persons by name, and gave the residue of his personal and real estate

### Statement of Facts.

to his brothers and sisters. By a codicil he bequeathed to an adopted son five per cent of the personal and real estate remaining at the widow's death:

3. The widow having elected to take under the intestate laws, her election, being equivalent to her death, obliterated any distinction between the proceeds of the different sales provided for in the will; and the definite legacies became presently payable out of the proceeds of the personal estate of the testator sold by the executor in her lifetime.

4. The fact that the widow's election disarranged the testator's scheme and disappointed the residuary legatees, presented no reason for throwing the definite legacies upon the fund to arise from the realty at the termination of the widow's life-estate therein under the intestate laws, thus departing from the ordinary rule that definite legatees are to be paid before residuary legatees.

5. Wherefore, upon distribution of the personal estate, which amounted to $2,823.66, the widow was entitled to take the one half thereof as if the testator had died intestate, and the remainder was divisible pro rata among the particular legacies, including said legacy of five per cent, which was to be calculated as five per cent of the entire net fund for distribution.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, Mc-COLLUM and MITCHELL, JJ.

No. 74 October Term 1890, Sup. Ct.; court below, No. 29 June Term 1889, O. C.

On June 29, 1889, the account of Thomas A. Ferguson and S. L. Reddick, executors of the will of Samuel Ferguson, deceased, embracing the personal estate of their testator, was filed in the court below, and on July 16, 1889, *Mr. Rush Fullerton* was appointed auditor to make distribution of the balance shown to be in the hands of the accountants.

The report of the auditor found the following facts:

1. The decedent, Samuel Ferguson, died on January 6, 1888, testate, leaving to survive him a widow, Eveline Ferguson, and without issue, but leaving collateral heirs, to wit: Thomas A. Ferguson, Rebecca Barr, Jane Lynn, Sarah McGarvey, Mary Ferguson, Ann Pitcairn, Eliza B. Godfrey, and Margaret Rife who died since the death of the said Samuel Ferguson, leaving to survive her three children of full age, to wit: Mary M. Campbell, George W. Rife and Thomas A. Rife.

VOL. CXXXVIII—14

Statement of Facts.

2. S. L. Reddick and Thomas A. Ferguson were constituted and appointed executors of the will of said decedent.

.3. The fund for distribution arose from the personal estate of said decedent as per final account of said executors filed May 1, 1889.

4. The last will and testament of the said Samuel Ferguson was admitted to probate on January 11, 1888, the portion of which relating to the matter under consideration reading as follows:

" I give and bequeath to my beloved wife, Eveline Ferguson, all my household furniture; all the income of my real estate; I also give, devise and bequeath to my said wife the improvement, use and income of my messuage and lot of land called the Decker farm, containing sixty acres; also thirty acres of land on which my dwelling-house is situated in South Buffalo township, with the appurtenances, to have and to hold for and during her natural life. Further, I direct that the personal property, not bequeathed to Eveline Ferguson, shall be sold, together with one house and lot situated on Carrol street, Allegheny city, and one lot in Clinton, said property to be sold by my executors. Further, I do direct the net proceeds of my personal and real estate so sold shall be put on interest for the benefit and use of my wife, she to draw the interest her natural lifetime, also the interest of all moneys, notes and bonds outstanding.

" At the death of my wife all my property shall be sold and out of the proceeds of this sale I give and bequeath to John I. Ferguson, Samuel H. Ferguson, William N. Ferguson and Eugene Ferguson each five hundred dollars ($500.00); all the rest and residue of my personal and real estate whatsoever and wheresoever, of what nature, kind and quality soever the same may be, not hereinbefore given and disposed of after paying my just debts and funeral expenses, I give and bequeath to each of my brother and sisters, share and share alike; that is to say, Thomas A. Ferguson, Jane Lynn, Margaret C. Rife, Rebecca Barr, Sarah McGarvey, Ann Pitcairn, Mary Ferguson and Eliza B. Godfrey. In the event of the death of my brother ór sisters, or their heirs, then their share to fall back to the then living heirs."

A codicil to the said will reads as follows :

Auditor's Report.

" I give and bequeath to my adopted son, Samuel Harry Ferguson, five per cent of the value of all my personal and real estate remaining at the death of Eveline Ferguson, my wife, in addition to the five hundred dollars bequeathed to him in a former will, of which this is a codicil."

5. That Eveline Ferguson, widow of said decedent, declined to accept the bequests made to her under the will in lieu of dower, and elected to take the portion of decedent's estate to which she would be entitled under the laws of this commonwealth, had said decedent died intestate.

6. That all the real estate of said decedent was sold by said executors on order of the Orphans' Court.

After allowing a claim against the estate, in favor of J. P. Klingensmith, guardian, the auditor reported, as his findings of law respecting the manner in which distribution should be made among the widow and residuary legatees, the following:

1. After deducting expenses of audit and register's fees, and claim, . . . . the balance of the fund is distributed to the heirs in accordance with their respective interests, as stated in decedent's last will and testament and codicil thereto, and to the widow as provided by the intestate laws of this commonwealth, she having declined to take under the will.

2. . . . . Your auditor is of the opinion that the legacies bequeathed to Samuel Harry Ferguson, by the codicil, and to John I. Ferguson, Samuel H. Ferguson, William N. Ferguson and Eugene Ferguson by the will, were vested legacies; that they were specific legacies; that the time of payment was contingent; that the brother and sisters were residuary legatees.

3. The personal estate is the primary fund for the payment of legacies.

4. Where a widow elects to take against her husband's will, legacies made payable at her decease become presently due though she be living: Coover's App., 74 Pa. 143.

5. If the time of payment of the legacies were contingent upon the death of the widow, her renunciation was the same as to determining the contingency as her death.

6. The payment of residuary legacies should be postponed to the payment of specific or particular legacies; and, where there is no evidence of loss by waste or insolvency of the ex-

ecutors, specific legacies are entitled to payment out of a fund which was first submitted for distribution, and are not bound to resort to another fund for payment in case of the residuary legatees.

7. As there does not appear to be sufficient funds for present distribution to pay the specific legacies, they should abate proportionately for the present, except, however, the legacy bequeathed to Samuel Harry Ferguson by the codicil, and as to that your auditor concludes that the said devisee is entitled to the full five per cent of the balance after deducting the expenses of audit, claim allowed to J. P. Klingensmith, guardian, and the widow's interest as above.

—The auditor accordingly reported a schedule of distribution by which $1,411.83, being the one half of the net amount remaining after payment of the costs of audit and the claim allowed, was awarded to the widow, and the like sum was distributed among the definite legatees, Samuel H. Ferguson being awarded five per cent thereof, or $70.59, and the residue, to wit, $1,341.24, being equally divided among John I. Ferguson, Samuel H. Ferguson, William N. Ferguson and Eugene Ferguson.

Rebecca Barr and others, residuary legatees, excepted to the report of the auditor:

1. In awarding $1,411.83 to and among the definite legatees.[2]

2. In not finding that the definite legacies should not be paid until the death of the widow, and should then be payable out of the fund arising from the real estate of the testator.[3]

3. In not awarding $1,411.83 to the residuary legatees.[4]

After argument, the court, McMichael, P. J., 17th district, on March 28, 1890, sustained the exceptions in the following opinion:

The auditor was appointed to distribute, among those legally entitled thereto, the funds in the hands of the executors of the estate of Samuel Ferguson, deceased, as shown by their final account. This account is an account of the personal estate of the deceased, and of course the fund for distribution is exclusively the proceeds of personalty.

[The learned auditor appears to have thought that he had

Opinion of Court below.

no right to take into consideration any fund or part of the estate except only the fund which he was appointed to distribute; and he did distribute it as though it were an entire fund by itself, separate and distinct from any part of the proceeds of the sale of the real estate of the deceased. This was a mistake, and this mistake perhaps led to the error in the distribution.] [1]

The testator's will was in evidence before the learned auditor, and he quotes from it the provisions which are important in this case. When these provisions are examined, it will be found that the testator bequeathed to his wife his household furniture absolutely. He devised to her two pieces of real estate during her natural life. He directed that his personal property, not bequeathed to his wife, and two lots of land mentioned, should be sold, and the interest on the proceeds of these sales and also the interest on all "moneys, notes, bonds outstanding" he directed should be received by her during her natural lifetime.

The property thus given to his wife, absolutely or for her life, was all the property the testator had, except a small piece of land which the proceedings in partition disclosed as owned by him, it being purpart D in these proceedings. This small piece is not mentioned or referred to in his will, except that it is included in the direction "at the death of my wife all my property shall be sold," etc. Thus we have substantially a disposition of his entire estate to his wife during her life. . . . .

Now, it will be observed that the particular pecuniary legacies are not by any provisions of the will to be paid out of the testator's personal estate. They, with the residuary legacies, are to be paid out of the proceeds of the sale of "all my property." The testator by his will converted all his property into personalty, so far as these legacies are concerned. He made of all his property, real and personal, one fund, out of which the particular legacies are to be paid and the remainder divided among the residuary legatees. The fund now for distribution, viz., the proceeds of the personalty, is but a part of the fund out of which these legacies are payable; and it is proper that the condition of the whole fund should be taken into consideration in order to arrive at a correct conclusion respecting the questions involved.

The learned auditor has not reported all the facts relating to the condition of the remainder of this fund. He finds that

the testator " died leaving to survive him a widow, Eveline Ferguson, and without issue, but leaving collateral heirs, to wit," the persons named in his will as residuary legatees. He finds that the widow declined to accept under the will, and elected to take the portion of the decedent's estate to which she would be entitled under the law had said decedent died intestate. He finds " that all the real estate of said decedent was sold by said executors on order of the Orphans' Court." We should know what became of the proceeds of that sale of real estate, because they are a part of the fund out of which these legacies are to be paid. The auditor's minutes show that the evidence was before him. In brief, it is that the testator's widow commenced proceedings for the partition of his real estate which resulted in sales of all of it for the aggregate sum of $9,314. The last sales were confirmed absolutely on June 24, 1889. The terms of sale, as finally ordered by the court, were that the executors, (they being the trustees who made the sales,) should receive from the purchasers one half of the purchase money presently on confirmation of sale " and the remaining one half to remain charged upon the said real estate during the lifetime of Eveline Ferguson, widow of said Samuel Ferguson, deceased, the interest thereof to be paid to her annually, and the principal to be paid at her death to the parties then entitled thereto, and to be secured by bond and mortgage on the premises."

It then appears that the entire fund from which the legacies bequeathed by the testator were to be paid at the death of his widow can never be accumulated. The one half of the proceeds of the personal estate has been withdrawn from the fund by the election of the widow not to take under the will. Of the remainder, one half of the proceeds of the personalty is now for distribution among the legatees. One half of the proceeds of the realty will probably be for distribution soon; and the remainder of the realty, amounting to over $4,500, is secured by bonds and mortgages on the respective parcels of land sold, and to be distributed at the death of the widow, the time when, by the will, all the legacies were to be paid.

Our question is, to whom, in view of all the facts, should the fund now for distribution be paid? The learned auditor has decided that it should be paid to the particular pecuniary

Opinion of Court below.

legatees, and one of the reasons given for that is, "the personal estate is the primary fund for the payment of legacies." We have seen that the testator, by his will, converted his entire estate into personalty, to make a fund out of which all the legacies should be paid. Under the will there could not be, and as the facts now are there cannot be, anything but personal estate to resort to, and this position of the auditor fails to apply to this case.

The case of Coover's App., 74 Pa. 143, is relied on for the position that the widow's election to take against the will has the effect to make these legacies presently due. In that case all the legacies were of one class; they were all residuary, and none of them was affected to a greater degree than were all the others by the widow's election. There the present payment to one was no injury to another; they were all equal. That is not our case. Here the particular legatees are entitled to be paid in full at the death of the widow, and there will be money enough to pay them. They are in no way injured or disappointed by the widow's election. The widow has withdrawn from the fund one half of the proceeds of the personal estate. That loss must fall on the residuary legatees. To that extent they are disappointed. On the other hand, the widow has, by her election, released one half of the personal estate and one half of the real estate proceeds, which were by the will to be held till her death, so that that much of the fund for the payment of legacies can now be distributed. Surely it would be just, when the particular legatees are in no way injured, to make this benefit, which the widow's election has made possible, compensate the injury which that election occasions to the residuary legatees.

The rule is well settled as elementary law, that legatees, who are disappointed by the election of widows to take their statutory estates and against the testamentary provisions made for them, are entitled to compensation out of the benefits intended to be conferred by the will on the widow, but which she has rejected: 1 Pomeroy's Eq., § 516, and cases cited; Story's Eq., §§ 1083, 1084, 1085; Sandoe's App., 65 Pa. 314. That this rule is applicable to cases such as the one at bar, is decided in Young's App., 108 Pa. 17, and Vance's Est., 24 W. N. 172, and cases there cited. Here, the residuary legatees are the disappointed

ones. The other legatees have no right to complain if the court do equity to the disappointed ones, so far as the condition of the fund will permit. The language of Justice STERRETT, in Young's Appeal, is as applicable here as in that case. " By the terms of the will their legacies are not payable until the death of the widow, and what right have they to demand payment in advance of the time, so long as there are disappointed beneficiaries who in equity should be compensated?" It follows from these authorities, that the persons to whom the learned auditor made distribution are not now entitled to this fund.

The next question is, what should be done with the fund? Provision must be made for the payment in full of these particular legacies when the time arrives for their payment. The present fund might be invested, and the interest paid to the residuary legatees during the life of the widow, and at her death the principal paid to the other legatees, but that does not appear to be necessary in this case. The residuary legatees are entitled to the whole fund, composed of that now for distribution and the proceeds of the sale of the realty, except so much as may be necessary to pay the particular legacies at the death of the widow. That amount can be very nearly ascertained now, and in no event can it reach $3,000. If that amount were securely invested until the widow's death, it would meet every requirement by others than the residuary legatees. As the facts are, there is now over $4,600 so invested, the interest of which is to be paid to the widow. I do not know how the court could make another investment more secure or more likely to be collected than this one. It is ample in amount and in security to meet every necessity of the case. There is, then, no necessity to invest the present fund. It may as well be paid at once to the persons who in any event would be entitled to it with its interest. . . . .

[The exceptions to the auditor's report are sustained; the distribution made by him to Samuel Harry Ferguson, to John I. Ferguson, to William N. Ferguson and to Eugene Ferguson is set aside, without prejudice to their rights to have the legacies bequeathed to them severally by the will of the testator paid out of his estate on the death of his widow.] [5]

[The fund distributed by the auditor to the persons above named, viz., the sum of $1,411.83, is now distributed in eight

equal parts or shares of $176.48 each, to Thomas A. Ferguson, Jane Lynn, Rebecca Barr, Sarah McGarvey, Ann Pitcairn, Mary Ferguson, Eliza B. Godfrey and the representatives of the estate of Margaret C. Rife, deceased. Each of the said persons named to receive one share, viz., $176.48.] [6]

—Thereupon Samuel H. Ferguson took this appeal, specifying that the court erred:

1. In the conclusion of law embraced in [  ] [1]

2–4. In sustaining the exceptions to the auditor's report. [2 to 4]

5, 6. In the parts of the decree embraced in [  ] [5 6]

*Mr. M. F. Leason* (with him *Mr. J. H. McCain* and *Mr. Ross Reynolds, Jr.,*) for the appellant:

1. The testator had in view his wife, as the first object of his bounty. Then came the particular legatees and after them the residuary legatees. The effect of a widow's refusal to take under her husband's will, is to make all the legacies which the will postpones until her death, due and payable immediately: Coover's App., 74 Pa. 143. A provision for such postponement being for the benefit of the widow, she may waive it: Gast v. Porter, 13 Pa. 537. Hence, when she refuses to accept under the will, all provisions intended for her benefit are, in legal effect, eliminated, and the legacies to be paid at her death become presently due and payable in the order mentioned in the will. Accordingly, the particular legacies in this will were entitled to be paid out of the first money ready for distribution. Equity has been called in, in a number of cases, to aid in preventing the defeat of the testator's intention, as in Gallagher's App., 87 Pa. 200; but never to introduce an interference with the plain intention of the testator or the well-established rules of distribution.

2. The decree in this case proceeds on a principle the very reverse of that laid down in Gallagher's Appeal. It advances the residuary legatees at the expense of the particular legatees, and compels the appellant to receive his five per cent, which is due to him from the entire estate, real and personal, out of the proceeds of the real estate, at the death of the widow, if he ever gets it at all. By the election of the widow, $1,411.83 was withdrawn from the distribution directed by the will, and the appellant was disappointed to the extent of five per cent

thereof.   Yet the court makes no compensation to him for this disappointment.   The cases cited by the court below do not support the decree.   Sandoe's App., 65 Pa. 314, read in connection with Bard's Est., 58 Pa. 393, a prior case in the same estate, is an authority for reversing in this case.   Nor do Young's App., 108 Pa. 17, and Vance's Est., 24 W. N. 172, support the doctrine laid down by the court below.   The exceptions to the auditor's report raised no question as to the real estate fund, and it was error for the court to make a general reconstruction of the work of the auditor.

*Mr. Joseph Buffington* (with him *Mr. Orr Buffington*), for the appellees:

1.  An assignment of error should in and of itself present the question the Supreme Court is called upon to decide : Landis v. Evans, 113 Pa. 335.   And it must contain only one item : Bartolet's App., 1 Walk. 77.   We submit that the appellant has not properly assigned any errors in this case.   He alone appeals.   The three other persons interested in the distribution made by the auditor have not done so.   If he wants the part of the decree affecting him reversed, he should specify singly the error of which he complains.   He must clearly assign the specific error which he asks this court to right.   Does he complain of not getting the five per cent bequeathed to him by the codicil, or of not getting the legacy given him by the original will?

2.  On the question of law presented below, the court was undoubtedly right.   This was not a case of the abatement of legacies, but simply the postponement of the particular legacies until the time provided in the will for their payment.   By the decree of the court, the particular legatees are to get the sums bequeathed to them and are to receive payment at the time specified therefor in the will.   The appellant's counsel beg the question in assuming that the appellant will not receive five per cent of the amount which the widow has taken.   No one disputes his right to it, and under a proper construction of the will he will be entitled to it at the proper time.

3.  The condition of the particular legatees is not affected by the widow's election, but that of the residuary legatees is affected very materially.   The latter are deprived of one half of

the personal estate absolutely, and by reason of the sale of the real estate charged with interest on one half of the purchase money during her life, they suffer from a very material depreciation in the price realized. In such circumstances, equity would come to their relief. Our position is squarely within the decisions in Vance's Est., 24 W. N. 172, and Young's App., 108 Pa. 17. Coover's App., 74 Pa. 143, merely settles that a widow's refusal to take under the will makes residuary legacies payable presently. In that case the legatees were all of one class. In Gallagher's App., 87 Pa. 200, the devisee was entitled to take at once.

OPINION, MR. JUSTICE MITCHELL:

It was held in Coover's App., 74 Pa. 143, that devises or bequests, subordinate to a life-estate in the widow and contingent upon her death, or payment of which is postponed until then, become presently payable upon her election to take under the intestate laws. As to its effect upon all claims under the will, her election is equivalent to her death. This is the general rule, and if there are any exceptions, they must depend on the expression or unavoidable implication of a contrary intent of the testator. No such intent is apparent in the present will. The widow was the chief object of the testator's bounty. With the exception of a small piece of land which he appears to have overlooked, he left her his whole estate, real and personal, either in specie, or in income, for her life. He gave nothing to anybody until her death. When, therefore, she renounced the provisions of the will, and claimed her legal rights under the intestate law, there was no longer any reason why the definite legacies to appellant and others should be postponed, and they became immediately due.

The learned court below was, however, of opinion that, as the residuary legatees would be disappointed in the amount coming to them, which would be diminished by the half of the personalty taken absolutely by the widow, they should be compensated out of the benefits intended to be conferred on the widow by the will which she has renounced. The principle is well settled that equity will depart from the literal provisions of a will in order to carry out a superior or preferred intent of the testator which would otherwise fail. But the object is not to

produce a distribution which the court may think more equal or more equitable, but to approximate as closely as possible to the scheme of the testator which has failed by reason of intervening rights or circumstances. Hence the regular order of the will is never departed from except of necessity, and then only to the extent that necessity requires. There is no such necessity in the present case. The exact scheme of the testator has been somewhat disarranged, but, taking out the widow's share, and treating her election as equivalent to her death, there is nothing at all in the way of carrying out the remaining directions of the will literally. True, the residuary legacies will be lessened in amount, but that is the unavoidable incident of such legacies. They take only what is left, be it much or little. Had the estate here, by any accident, been reduced to four thousand dollars, the widow would have taken one half, the definite legatees the other half, and the residuaries nothing. On the other hand, had it increased to forty thousand dollars, the definite legatees would still have got no more than their five hundred dollars each, and the residuaries would have reaped the full benefit of the rise. Such subjection to contingencies is the fortune of residuary gifts. The testator is presumed to have known this; and yet, knowing it, he provided that each of the definite legatees should receive five hundred dollars before the residuaries should receive anything. To postpone the former to the latter would be a plain violation of the testator's express command. In this case, the definite legatees, to be sure, get the benefit of the acceleration of payment, but so also do the residuaries. The latter, moreover, get the advantage of one half the personalty given by the will absolutely to the widow, and it might so happen that this, and the acceleration of payment, would be practically more valuable to the residuary legatees than the provisions of the will. The use and income from now until the death of the widow may far more than make up for the diminution of the principal. That is a matter which will vary with the facts of each case. But the law must have a settled and uniform rule, and it is that the widow's election to take against the will is equivalent to her death.

It is urged by the appellee that the testator made a distinction between the fund raised by the sale of the property not bequeathed to his wife, and the sale to be made after her death;

Opinion of the Court.

and that it is out of the proceeds of this latter sale that the definite legacies are directed to be paid. But the distinction between the two funds has been obliterated by action of the widow equivalent to her death. Again, it is said that the particular pecuniary legacies are not made payable out of the personal estate. But neither are the residuary legacies. Both are payable out of the same fund, and there is no sufficient reason for departing from the ordinary rule that specific legacies are to be first paid, and then the residuaries.

The learned judge was largely influenced by Young's App., 108 Pa. 17, and the reasoning of the court below in that case would appear to sustain his conclusion. But, though the decree in Young's Appeal was affirmed, the opinion of this court contains no intimation of an intent to depart from the principle settled in Coover's Appeal. The main question was whether the annuity survived. It was charged expressly on the life-estate of the wife; and when the wife destroyed that estate by action equivalent to her death, it was claimed that the annuity fell also. To save the annuity as a preferred intent of the testator, was the object of invoking the principle now under discussion, and to that only was the opinion of this court directed. If there was any departure from the recognized principle in the other points involved, it was because they were so subordinate that it was overlooked in the general affirmance of the decree, which was clearly right on the main and only important question. The case was intended to be in entire harmony with the rule laid down in Coover's Appeal, and with the applications that had been made of it in other cases. In one of these, Gallagher's App., 87 Pa. 200, the law is well expressed by the learned judge of the court below, approved by this court, as follows: " Where a widow elects not to take under a will, her substituted devises and bequests are a trust in her for the benefit of the disappointed claimants, to the amount of their interest therein. A court of equity will sequester the benefit intended for the wife, to secure compensation to those whom her election disappoints. Then add the general rule that specific legatees and devisees shall be first satisfied, and any deficiency or loss must fall upon the residuary legatees, and we think this question is decided."

From these views it follows that in its main features the dis-

tribution reported by the auditor was correct, but it must be modified in regard to the five per cent payable to the appellant. By the terms of the codicil this was to be " five per cent of the value of all the personal and real estate remaining at the death of Eveline Ferguson." This is five per cent of the whole net fund for distribution, and must be so calculated, though it will of course come out of the remaining half, after the widow has taken her half. There is, however, no reason why it should have any priority in payment over the definite pecuniary lega- cies. It is no more definite, and is given no precedence over them by the will. It should therefore come in pari passu. It would have simplified matters in this respect, and avoided any question of pro-rating, if the second fund arising from the sale of the real estate, etc., had been referred also to the auditor, but as it was not, the distribution must be made without ref- erence to it. The widow will take one half as if the decedent had died intestate, and the other half will then pass under the will as if the widow were dead. The definite pecuniary lega- tees, including the appellant's five per cent, will take the bal- ance of the present fund pro rata, and the residuaries will have to wait until there is a residue to come to them.

> Judgment reversed, and record remitted for dis- tribution to be made on the principles herein indicated.

