## Carter's Estate.

*Decedents' estates—Wills — Trusts—Accumulation—Widow's election to take action against will—Effect of Wills and Intestate Acts of June 7, 1917.*

1. An election by a widow to take against the will affects her interest, and the result is as though there had been no will in so far as she is concerned.

2. The Wills Act of June 7, 1917, P. L. 403, and the Intestate Act of June 7, 1917, P. L. 429, do not contemplate a one-half interest to the surviving spouse in what may be left after payment of amounts of annuities and legacies provided in the testator's will, but a one-half interest in the estate without deducting annuities or legacies or amounts for specified purposes.

3. The widow's election destroys the provisions of the will made for her. Testator's intent, plan or scheme relating to her cannot be carried out, but that does not render inoperative the other provisions of the will; the intent must be observed as far as possible.

4. The Act of April 18, 1853, § 9, P. L. 503, prohibits the accumulation of surplus income, and if such accumulations are clearly beyond what may be reasonably required to fully and effectually carry out the provisions of the trusts, they are invalid and pass to those who would be entitled to them if they had not been directed.

Petition for audit and interpretation of will. O. C. Erie Co., Sept. T., 1923, No. 11.

*Gunnison, Fish, Gifford & Chapin,* for executor and beneficiaries.

CLARK, P. J., Nov. 23, 1923.—Edward D. Carter made his will March 3, 1913, and a codicil July 21, 1916. He died Oct. 24, 1922. The will was duly probated and letters testamentary were issued to the Security Savings and Trust Company, appointed executor by the testator in his will, and the said company has been acting as such since.

Aug. 11, 1923, the executor filed a first and partial account, which came on for audit Oct. 22, 1923. The total assets were $566,089.32; the disbursements were $86,281.32, leaving a balance of $479,808.

Testator left surviving him his widow, Clara E. Carter; one child, a daughter Maude, who is the wife of Thomas S. Shannon, and one grandson, Edward Carter Shannon, who is the son of Maude and Thomas S. Shannon.

4 D. & C.

Carter's Estate.

A portion of the will is as follows:

"Second. I hereby direct the Executors named herein to keep my entire estate, real and personal, intact for a period of at least eight (8) years from the date of my death, except as hereinafter stipulated.

"Third. I hereby direct that my Executors shall collect the insurance on my life, that is, that portion of it which is payable to my estate on my death.

"Fourth. I hereby direct that out of the insurance funds as collected the following amounts are to be paid:

"(a) To my daughter Maud, wife of Thomas S. Shannon, I give Ten Thousand dollars ($10,000), which she is to invest in a home.

"(b) To my grandson, Edward Carter Shannon, I give an annuity of Two Thousand dollars ($2,000), to be paid for a period of five (5) years, either to his parents, or to himself if he is of age, upon proper requisition on my Executors. One-half (½) of this annuity must be used for educational purposes.

"(c) To the Young Woman's Christian Association of Erie, Pennsylvania, I give the sum of Five thousand dollars ($5,000).

"(d) To the Old Ladies' Home of Erie, Pennsylvania, I give the sum of Five thousand dollars ($5,000).

"Fifth. I hereby direct that my Executors expend the sum of Ten thousand dollars ($10,000) in the purchase of a suitable location in the Erie Cemetery and the erection thereon of a proper mausoleum to receive the bodies of myself and family.

"Sixth. I hereby direct that my executors pay to my wife, if living, an annuity of Eight thousand dollars ($8,000), to be paid quarterly until my estate shall be closed as hereinafter provided.

"Seventh. I hereby direct that my Executors pay to my daughter, Maude, wife of Thomas S. Shannon, an annuity of Four thousand dollars ($4,000) in quarterly payments until my estate shall be closed as hereinafter provided.

"Eighth. All annuities made in this will may be paid out of unexpended life insurance funds, or the income from same, or from the income from my estate other than life insurance.

"Ninth. I hereby direct my Executors, that if after a period of eight (8) years, my estate, both real and personal, be in such shape that in their opinion there will be no loss to, or embarrassment of associates or partners in enterprises forming a part of my estate, or in which my estate will have an interest, then shall my estate be closed in the following manner, to wit: One-third (⅓) of same to my wife, the residue to my daughter Maud, wife of Thomas S. Shannon, and in any event my estate must be so closed at the expiration of ten (10) years after my death."

The widow, Clara E. Carter, and the daughter, Maude Carter Shannon, join in a written request and authorize the executor to pay from the general estate, after and subject only to the debts, inheritance taxes and expenses of the estate, the legacies mentioned in the fourth clause of the will and also the $10,000 specified in the fifth clause for the purposes therein named.

Disbursements have been made covering these legacies, except the one for the grandson provided for in the fourth clause of the will—paragraph (b). It was the evident intent of the testator that payments should be made periodically, $2000 annually for five years, and not in one lump sum.

The testator directs in the fourth clause of his will that the legacies therein provided for shall be paid out of the insurance funds payable to his estate. The inventory shows life insurance of $37,000. This is the fund out of which the amounts named in this fourth clause must be paid.

Carter's Estate.

The annuities, beside the one for testator's grandson, are for his wife $8000 annually, and for his daughter $4000 yearly, both to be paid quarterly, and the eighth clause of the will specifies the funds out of which payment is to be made, either from insurance funds or income from another portion of his estate.

The widow has elected to take against the will, and that eliminates the annuity of $8000 to her.

There is not enough left of the insurance funds out of which to pay the annuity to the daughter of $4000 yearly in quarterly payments, and an alternative source of payment is provided for out of the income of other assets.

Two questions arise: First. Does the election of the widow operate to terminate the trust created by the will as to the residuary estate, or should the trust remain effective as to the remainder of the estate after the widow has received her share? Second. Do the terms of the will result in an accumulation of income in violation of the statute of April 18, 1853, § 9, P. L. 503, prohibiting it; if so, who is entitled to the income?

"Section 9. That no person or persons shall, after the passing of this act, by any deed, will or otherwise, settle or dispose of any real or personal property so and in such manner that the rents, issues, interest or profits thereof shall be wholly or partially accumulated for any longer term than the life or lives of any such grantor or grantors, settler or settlers, or testator, and the term of twenty-one years from the death of any such grantor, settler or testator; that is to say, only after such decease during the minority or respective minorities, with allowance for the period of gestation of any person or persons who, under the uses or trusts of the deed, will or other assurance directing such accumulation, would, for the time being, if of full age, be entitled to the rents, issues, interests and profits so directed to accumulate, and in every case where any accumulation shall be directed otherwise than as aforesaid, such direction shall be null and void, in so far as it shall exceed the limits of this act, and the rents, issues, interests and profits so directed to be accumulated contrary to the provisions of this act shall go to and be received by such person or persons as would have been entitled thereto if such accumulation had not been directed: Provided, that any donation, bequest or devise for any literary, scientific, charitable or religious purpose shall not come within the prohibition of this section, which shall take effect and be in force as well in respect to wills heretofore made by persons yet living and of competent mind as in respect to wills hereafter to be made: And provided, that, notwithstanding any direction to accumulate rents, issues, interests and profits for the benefit of any minor or minors, it shall be lawful for the proper court as aforesaid, on the application of the guardian, where there shall be no other means for maintenance or education, to decree an adequate allowance for such purpose, but in such manner as to make an equal distribution among those having equal rights or expectations, whether at the time being minors or of lawful age."

The intent of the testator was to have his residuary estate preserved intact for a period of at least eight years and not longer than ten years. This plan might become inoperative, first, by the widow's election to take against the will; second, by testator's disposition of the income, resulting in accumulations of the same, which are prohibited by the act.

The election to take against the will affects the wife's interest, and the result is as though there had been no will, in so far as she is concerned.

"When any person shall die testate, leaving a surviving spouse, who shall elect to take against the will, such surviving spouse shall be entitled to such

4 D. & C.

Carter's Estate.

interests in the real and personal estate of the deceased spouse as he or she would have been entitled to had the testator died intestate:" Wills Act of June 7, 1917, § 23 *(a)*, P. L. 403.

This act controls and must be followed in the settlement of this estate.

What, then, is the surviving spouse, Clara E. Carter, entitled to?

When an intestate leaves a spouse surviving and one child only, the spouse shall be entitled to one-half part of the real and personal estate: Intestate Act of June 7, 1917, § 1 *(a)*, P. L. 429.

After payment of the debts and costs of administration, Clara E. Carter takes one-half of the estate immediately.

The acts cited do not contemplate a one-half interest to the surviving spouse in what may be left after payment of amounts of annuities and legacies provided in testator's will, but a one-half interest in the estate without deducting annuities or legacies or amounts for specified purposes. To hold otherwise would be permitting a testator, by the provisions of his will, to render ineffective the plain intent of the acts.

However, in the instant case, the surviving spouse has voluntarily waived her full rights by her written request to the executor to pay out of the general estate the legacies and annuity specified in the fourth clause of the will and the amount for cemetery lot and mausoleum. The daughter has joined in this request. What was evidently intended was that each should equally bear one-half of the sum total, that these amounts should be treated as debts, and the balance should constitute the *corpus* of the estate to be divided.

The widow's election destroys the provisions of the will made for her. Testator's intent, plan or scheme relating to her cannot be carried out, but that does not render inoperative the other provisions of the will; the intent must be observed as far as possible.

If conditions make a departure from intent imperative, it must only be to the extent that the circumstances require departure. "The regular order of the will is never departed from except of necessity, and then only to the extent that necessity requires:" Ferguson's Estate, 138 Pa. 208; Portuondo's Estate, 185 Pa. 472.

When a will creates a trust, the widow to receive a part of the income for life and the balance is given to testator's child or children during the life of the widow, and the *corpus* devised to the same child or children after the widow's death, and she elects to take against the will, the trust estate is terminated, remainders are accelerated and the children's estate vests immediately: Coover's Appeal, 74 Pa. 143; Woodburn's Estate, 151 Pa. 586; Reighard's Estate, 253 Pa. 43; Vance's Estate, 141 Pa. 201; Disston's Estate, 257 Pa. 537; Ferguson's Estate, 138 Pa. 208. And this rule must be followed unless a different intent is disclosed by the will, either by express provision or by inference. This rule is not applicable to the case under consideration.

"An intent that there shall be no acceleration may be shown by inevitable implication, as, for instance, where the will itself fixes a definite time for distribution independently of the widow's death:" Disston's Estate, 257 Pa. 537, 543.

This seems conclusive in its application to the present will, which fixes a definite time, irrespective of the widow's death. A trust is established for the grandson and the daughter, continuing for the term of at least eight years and not longer than ten, and is not disturbed by the election of the widow; but this trust cannot be executed by applying the income of the estate to payment of the annuity to the daughter.

Carter's Estate.

Payment of the annuity to the grandson has been provided for out of the insurance fund, and even if it had not and both annuities were to come out of income, this could not be allowed. Taken together, they would violate the Act of Assembly of April 18, 1853, P. L. 503. They would not consume the income, and then accumulations prohibited by the act would accrue.

To whom does the income from the daughter's share belong, and when can the person entitled to it receive it?

The income from the daughter's share is approximately $14,000 per year, largely in excess of the annuity, resulting in an accumulation of income.

"Accumulation is forbidden by the act, no less where it results by indirection than where it is expressly ordered:" White's Estate, 8 Dist. R. 33.

This was asserted in an opinion by Judge Penrose, and the same rule of law is found in Weinmann's Estate, 223 Pa. 508, Neel's Estate, 252 Pa. 394, 409; Billings's Estate (No. 2), 268 Pa. 71, 74; Selden's Estate, 5 Erie Co. L. J. 60.

"If the estate is disposed of in such manner that accumulations clearly beyond what may be reasonably required to fully and effectually carry out the provisions of the trust must necessarily exist, it amounts to an implied direction to accumulate:" Eberly's Appeal, 110 Pa. 95, 98.

Accumulations of surplus income cannot be capitalized and added to the principal estate: Middleton's Estate, 17 Dist. R. 394.

There is "surplus income" in the case at bar.

When such accumulations are capitalized and are to be added to the principal and take its destination, such disposition is invalid: Washington's Estate, 75 Pa. 102; Grim's Appeal, 109 Pa. 391; Hibbs Estate, 143 Pa. 217, 224.

Maude C. Shannon, the daughter, is the sole heir and sole residuary legatee and is entitled to receive her share of the principal, her entire residue at the termination of the trust, and during its continuance she takes all of the income.

Invalid accumulations pass to those who would be entitled to them if they had not been directed: Edwards's Estate, 190 Pa. 177; Ward's Estate, 8 Dist. R. 701; Forsythe's Estate, 47 Pitts. L. J. 73.

## Order.

And now, to wit, Nov. 23, 1923, it is adjudged, ordered and decreed that the widow's election to take against the will eliminates the provisions of the will relating to her; that this election does not extinguish the remaining trusts, which must be carried out as far as possible; that the widow, Clara E. Carter, is entitled to her share now; that the daughter, Maude C. Shannon, shall be paid the income quarterly as it accrues on her portion of the *corpus* of the estate; that this portion shall be given to her in its entirety on the settlement of the estate within the time prescribed in the will; that the grandson, Edward Carter Shannon, the Young Women's Christian Association and the Old Ladies' Home and Maude C. Shannon, the daughter, be paid out of the insurance fund as provided in the will; that the executor pay the debts, the expenses of administration, including the inheritance tax and the amounts which the beneficiaries, the widow and the daughter, requested, treating these amounts as general debts, and then ascertain the remainder or balance of the estate and apportion it, one-half to the widow and the residue to the daughter, and that the executor proceed to the settlement of the estate in accordance with the foregoing opinion, and to discharge the duties thereof as executor, file an account and continue to act as trustee during the existence of the trust.

From Lytle F. Perry, Erie, Pa.