## Smith's Estate.

*Wills—Widow — Life estate — Relinquishment of life estate—Partition—Widow's election.*

1. A widow who is given a life estate by her husband, with remainder to children, and accepts under the will, may thereafter, in writing, "relinquish and release" her life estate in the property devised and bequeathed to her, and the remaindermen may then be entitld to partition of the real estate.

2. In such case, it is immaterial that the executors are given the power to sell the personalty and rent the real estate, inasmuch as the widow owns the income and necessarily the right from which it springs.

*Partition — Orphans' Court—Process—Citation—Service of citation—Act of June 7, 1917.*

3. Under the Act of June 7, 1917, P. L. 340, service of citation in partition proceedings in the Orphans' Court cannot be made by registered letter.

4. A petition for partition must aver definitely that there are no parties interested save those named in the petition, and should state whether or not there are encumbrances on the land.

Rule to show cause why proceedings in partition should not be dismissed. O. C. Snyder Co.

*Knight & Taggart,* for rule; *A. F. Gilbert,* contra.

POTTER, P. J., Aug. 24, 1925.—On June 27, 1925, a petition was presented to us by James H. Smith, a son of the decedent, asking for a citation on all parties interested, requiring them to show cause why an inquest in partition should not be awarded. The citation was allowed, which was served personally on most of the heirs and by registered mail on the others.

On July 13, 1925, the petition of Ira C. Smith, also a son of the decedent, was presented, asking for a rule on the parties in interest requiring them to

Smith's Estate.

show cause why the partition proceedings should not be dismissed, setting up reasons therefor, which we shall dispose of in due order.

Ezra Smith died testate on Feb. 19, 1914, and appointed James H. Smith, a son, and Howard Walter as his executors. His will was duly probated and letters testamentary were issued to his executors. His will is as follows:

"I, Ezra Smith, of Beaver Township, in the County of Snyder and State of Pennsylvania, yeoman, being of sound mind, memory and understanding, do make and publish this my last will and testament:

"I give and bequeath unto my beloved wife, Adeline Smith, all my personal property and real estate I possess at the time of my decease to hold during her natural life.

"My executors to sell all my personal property and rent farm and it is my will that she make her home with one of the children.

"After the death of my wife, Adeline Smith, it shall be divided share and share alike between my children.

"I appoint my son, James H. Smith, and Howard Walter as executors of this my last will and testament, and said executors to see that my wife is well taken care of.

"In witness whereof, I have hereunto set my hand and seal the 2nd day of June, 1913.

(Signed) "EZRA SMITH. [Seal.]

"Witnesses:

"JAMES H. BINGAMAN.

"JACOB A. AIGLER."

On March 9, 1914, his widow, Adeline Smith, made her election to take under the will, which was duly filed and recorded. It seems this widow used the income of her husband's estate, as provided by his will, till June 25, 1925, when she surrendered her life estate by filing the following paper, to wit:

"Now, June 25, 1925, I, Adeline Smith, widow of Ezra Smith, deceased, hereby relinquish and release my life estate in the farm of Ezra Smith, deceased, situate in Beaver Township, Snyder County, Pa., and containing 169 acres, more or less.

"Witnesses to mark:

"J. B. SPANGLER.

"A. H. WALTER."

"ADELINE (X) SMITH.
her

mark

After which the petition for the citation for partition was presented, the following being a copy thereof, with the decree entered thereon by the two associate judges of this court:

"In the O. C. of Snyder County. At Oct. Adj. Term, 1925.

"In re Estate of Ezra Smith, late of Beaver Township, Deceased.

"Petition for citation and writ of partition.

"To the Honorable the Judges of said Court:

"(1) The petition of James H. Smith respectfully represents:

"(2) That Ezra Smith died Feb. 19, 1914, testate, his last will and testament, probated March 6, 1914, is of record in Will Book No. 6, page 239, and a copy thereof is hereto attached and made a part of this petition.

"(3) That testator devised his real estate to his wife, Adeline Smith, to hold during her natural life.

"(4) That the legatees and devisees of testator are as follows: (1) Adeline Smith, widow, Beavertown, Snyder Co., Pa., care of Howard Walter; (2) James H. Smith, son, Benfer, Snyder Co., Pa.; (3) Ira C. Smith, son, Troxelville, Snyder Co., Pa.; (4) Geo. A. Smith, son, Mifflinburg, Union Co., Pa., R.

D. No. 1; (5) Lydia (Mrs. James H.) Knepp, daughter, Beavertown, Snyder Co., Pa.; (6) David L. Smith, deceased (died after his father, Ezra Smith): (1) Lottie Smith, widow, McClure, Snyder Co., Pa., R. D.; (2) The Sunbury Trust and Safe Deposit Co., guardian of the three minor children of David L. Smith, deceased.

"(5) That testator died seized in his demesne as of fee in the following real estate: All that certain messuage, tenement and tract of land, situate in Beaver Township, Snyder Co., Pa., and bounded and described as follows: Adjoining lands of James Weiand, James Foreman, Clarence Bailey, George Lepley, James H. Smith et al. and containing one hundred and sixty-eight (168) acres, more or less, with the appurtenances.

"(6) That Adeline Smith, widow of testator, has relinquished her life estate in said real estate.

"(7) That your petitioner is a legatee and devisee of testator.

".(8) Wherefore, they pray your Honors to award a citation on all parties in interest to show cause why an inquest in partition of said real estate should not be awarded, and if no cause is shown, to award said inquest as prayed for.

"JAMES H. SMITH.

"Snyder County, ss.:

"Personally appeared before me, the undersigned, James H. Smith, petitioner above named, who, being by me duly sworn according to law, deposes and says: That the averments of the above petition are true to the best of his knowledge and belief.

"JAMES H. SMITH.

"Sworn and subscribed to before me this 23rd day of June, 1925.

"J. B. SPANGLER, J. P.

"Com. exp. Jan., 1928.   (Official seal attached.)

"Now, June 25, 1925, I, Adeline Smith, widow of Ezra Smith, deceased, hereby relinquish and release my life estate in the farm of said Ezra Smith, deceased, situate in Beaver Township, Snyder County, Penna.

her
"ADELINE (X) SMITH.
mark

"Witness to mark:
  "J. B. SPANGLER.
  "A. H. WALTER.

"*Decree.*

"Now, June 27, 1925, citation awarded as prayed for; service within Snyder County to be made by the Sheriff by serving true and attested copies of this petition and decree, and outside of Snyder County, the same service is to be made by registered mail.   Returnable July 13, 1925.

"CHAS. M. INGRAM, A. J.
"N. B. STETLER, A. J."

The reasons why these proceedings should be dismissed as filed, or the most of them, seem to have been abandoned, and the following reasons, as taken from the brief of the petitioner for the rule, seem to be substituted for them, viz.:

1. Adeline Smith, widow of Ezra, has an outstanding life estate in the whole of said farm and, consequently, under section 1 of the Partition Act of June 7, 1917, P. L. 337, the court has no jurisdiction.

2. Under the will the executors hold the farm in trust for the widow's life and she cannot release it.

3. Service of the citation has not been made upon George A. Smith, one of the children of Ezra, nor upon The Sunbury Trust and Safe Deposit Com-

pany, guardian of certain of the children of a deceased child of Ezra, according to the provisions of the Partition Act of 1917 and the Orphans' Court Act of June 7, 1917, P. L. 363.

4. The petition does not show on its face sufficient facts to give the court jurisdiction.

The first reason sets out that this widow has a life estate in the real estate of her husband sought to be partitioned, notwithstanding her surrender of it, of which she cannot make disposition. The first paragraph of the will of her husband clearly gives her a life estate in all his property, both real and personal. It is her property absolutely, of which she is the undisputed owner. The second paragraph directs his executors to sell the personal property, to rent the farm, and directs that the widow make her home with the children. The yearly income from the money derived from the sale of the personal property is then to be given to the widow. Instead of having the corporeal possession of the personal property, she is to have the possession and ownership of the income of the money derived from its sale. The testator apparently desires to further relieve her of responsibility and trouble, so he directs that his executors, who, for this purpose, may be called trustees, rent the farm for her, and it follows that she is to receive the profits of it. She thus owns the income of the money derived from the sale of the personalty, as well as the income from the farm. It is her absolute property, and we think she can do as she wishes with it. She can sell it, she can give it away or make such disposition of it as may suit her. If she owns the income from these two sources, she must necessarily own the right from which it springs. She does not own the property itself, but she does own the use of it, and if she owns the right to it, she can also dispose of this right in any manner she may see fit, and having done so, she can make no further claim regarding it. She has parted with it and it is gone from her.

The Orphans' Court Partition Act of June 7, 1917, P. L. 337, 339, provides that the Orphans' Court shall not have jurisdiction of real estate in partition proceedings during the continuance of any life estate in the whole of such real estate. If the farm of Ezra Smith was clogged by this widow's life estate in it, then, clearly, we would have no jurisdiction and the proceedings would need be dismissed, but we think that by her written surrender of her life estate, under date of June 25, 1925, she thus relieved the farm under contemplation of the life estate she had in it by the terms of her husband's will. Upon the death of Ezra Smith, the fee in the farm passed to his children as remaindermen, while the life estate vested in the widow. Upon the death of the widow, her life estate terminates and the remaindermen take full possession if the life estate so long continues. A life estate may be terminated by surrender, which consists in yielding up the particular estate to the person having the next immediate estate in remainder or reversion: 21 Corpus Juris, 970. And by the determination of a life estate in any manner, the lifetenant's leases and mortgages are terminated and the remainderman is given a right to immediate possession: 21 Corpus Juris, 971, § 121.

Under the will of Ezra Smith, the bequest to his widow is a life estate in all his property. She gets nothing more and nothing less. She did not need to accept it, and no one could have compelled her to do so, and no one could compel her to keep it. If she could have refused it upon the death of her husband, why cannot she refuse to keep it now? If she had refused it then, she would have taken under the intestate laws. If she surrenders it now, she takes nothing. We fail to see how any one can be prevented from giving away his property, and that is exactly what this widow has done. By the sur-

Smith's Estate.

render of her life estate no one is injured. She gets nothing in place of it. It is purely a gift to the remaindermen. If she attempted to make a claim on the estate of her husband under the intestate laws, we can see very plainly how her claim, or rather her re-election, might be defeated, but when she makes no claim for anything and wishes to give up her life estate for nothing in return, we must say that we know of no law, either statute or common, that will prevent her from so doing. Of course, if these executors, as trustees, or by what name they may be designated, have rented the farm, they were acting as the agent or trustee of this widow, and when the life estate determines, mortgages, leases, &c., built upon it also must cease: 21 Corpus Juris, 971.

When a widow declines to accept the provision for her contained in the will of her deceased husband, she takes the interest in his estate to which she is entitled under the intestate laws, and as to her there is no will. The remainder of the estate will then pass under the will as if the widow were dead. Any estate in the property to which she might have been entitled under the will ceases to exist. Devises or bequests contained in the will subordinate to a life estate in the widow and contingent upon her death or payment of which is postponed until then, become presently payable upon her election to take under the intestate laws. Devises and bequests in remainder, to take effect at the termination of the life interest of the widow created by the will, are accelerated and become immediately vested: Ferguson's Estate, 138 Pa. 208; Vance's Estate, 141 Pa. 201; Wyllner's Estate, 65 Pa. Superior Ct. 396.

When a widow refuses to take under the will of her husband, she can take under the intestate laws, or when she surrenders the one she gets the other. But in the case at bar, when she surrenders her life estate she gets nothing, wherefore, we think, by a spirit of analogy, the principle as laid down in the above citations is applicable here. In this case the facts are not at all similar to a case where a widow has made her election and afterwards retracts and demands her share under the intestate laws, and cases like these are not applicable here.

The case of Kidder v. Kidder, 33 Pa. 268, is cited to us as tending to support the reasons for dismissing the partition proceedings, but that was where a release of a debt was attempted without consideration. We do not think that case applies to the facts before us.

We are, therefore, led to the conclusion that this widow parted with the life estate in the real estate of her deceased husband, and, therefore, so far as relates to this aspect of the case, the Orphans' Court has jurisdiction. This disposes of the first and second reasons.

The third reason complains that the service of the citation was not lawfully made upon George A. Smith, one of the sons of the decedent, and upon The Sunbury Trust and Safe Deposit Company of Sunbury, as guardian of the minor children of David L. Smith, deceased, who was a son of the said decedent.

Under recent legislation a citation must issue, directed to the parties in interest, requiring them to appear on a certain day and show cause why partition should not be awarded.

The sheriff's return to the service of the citation in this case shows that it was personally served upon James H. Smith, Ira C. Smith, Adeline Smith, Lottie Smith, who is the widow of David L. Smith, deceased, and Lydia Knepp. Nothing can be said against the service upon these persons.

The sheriff, however, returns that a true and attested copy of the petition for the citation and of the writ of partition was sent by registered mail to

George A. Smith, a son, and to The Sunbury Trust and Safe Deposit Company, and that in each of these cases a return receipt was asked for. There is nothing on the return to indicate whether or not the return receipt was received, and the sheriff's return of service is conclusive.

The Act of June 7, 1917, § 3, P. L. 337, 340, provides that "such citation shall be served in the manner provided by law for the service of other citations in the Orphans' Court."

By reference being had to the Orphans' Court Act of June 7, 1917, § 17, subdivision "c," P. L. 363, we find the "manner of service shall be by giving a copy thereof to the respondent personally or by leaving such copy with some adult member of his family at his place of residence." And by sub-division "d" of the same section of the same act, we find that such service may be made anywhere within the Commonwealth of Pennsylvania.

We fail to find any rule of court providing for this service by registered mail, and even if there was, the service must be made as is provided by the act of assembly, and the rule of court would need to yield to the provisions of the act.

The service of the citation was legal as to all the parties named but George A. Smith and The Sunbury Trust and Safe Deposit Company. These latter two were not served as is provided by law, nor have they submitted themselves to the jurisdiction of this court, wherefore, they are not in court, although being residents of the Commonwealth whose places of residence are known. With this state of affairs existing, we must say the services of these two parties are fatally defective and these proceedings cannot go on.

The fourth reason complains that the petition for the citation does not show on its face sufficient facts to give the court jurisdiction.

In Danhouse's Estate, 130 Pa. 256, Mr. Chief Justice Paxson says: "The petition sets forth that 'Frederick Danhouse died on April 8, 1880, leaving to survive him Susan, his widow, and one child, to wit, John M. Danhouse.' This is a meagre statement of the ownership of land of which partition is to be made. The names of all the parties should not only be given, but there should be a positive averment that they are the only parties."

The petition should name the collateral heirs of the estate of the testator and the parties entitled under the intestate laws: Leahey v. O'Connor, 281 Pa. 488, 495, and cases there cited. While the doctrine enunciated in this case may not be applicable here, we think it worth while to cite it in order to show to what a strictness the petitioner is held in drawing his petition.

A petition for partition must aver definitely that there are no parties interested save those named in the petition: Kantner's Estate, 24 Pa. C. C. Reps. 310; Purcell v. Purcell, 9 Dist. R. 188.

In the petition for the citation we have no averment that the persons therein named are all the parties in interest or that there are no other parties except those named. This should be shown: Smitham's Estate, 7 Schuyl. Legal Rec. 113; McLaughlin's Estate, 12 Schuyl. Legal Rec. 45.

And we have no information concerning David L. Smith, when he died, whether he died testate or intestate, what interest his children may have in the estate of Ezra Smith, nor how many of them there are, nor their names nor ages respectively: Drum's Estate, 22 Pa. C. C. Reps. 551.

We also think the petition should state whether or not there are any encumbrances on the land, and if so, their respective amounts and to whom due: Purcell v. Purcell, 9 Dist. R. 188.

The provision of the testator in the third paragraph of his will, providing that after the death of his wife his property should be distributed share and

Smith's Estate.

share alike between his children, we think was made in contemplation of his wife holding her life estate during her life. It surely cannot be held to apply after her surrender of it, as then there would be no necessity for prolonging the distribution, and so far as she is concerned, after she has surrendered her life estate in relation to this farm, she is as dead.

We have no evidence or proof that this widow surrendered her life estate for the purpose of assisting or validating the partition proceedings. We only know that she has surrendered it, and till the contrary is shown, we must accept it as her voluntary act.

We have given the questions submitted to us some thought and research, from which we feel that we must sustain the third and fourth reasons why the proceedings should be dismissed, viz., in that legal service was not made upon all the parties in interest, and in that the petition is fatally defective, as we have herein indicated, wherefore the proceedings must fall.

And now, to wit, Aug. 24, 1925, the rule is made absolute and the proceedings in partition are quashed without prejudice.

From Charles P. Ulrich, Selinsgrove, Pa.