Edelman's Estate.

Argued April 12, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Edward J. Fox, Jr.*, with him *Carleton T. Woodring*, for appellants, No. 31, and for appellee, Nos. 33 and 42.

*Robert von Moschzisker*, with him *Calvin F. Smith*, of *Smith & Paff*, for appellees, No. 31, and for appellants, Nos. 33 and 42.

OPINION BY MR. JUSTICE SCHAFFER, May 25, 1939:

There are three appeals before us in this matter. They all grow out of determinations by the court below upon questions raised in the adjudication of the Estate of

Andrew C. Edelman. Because of the interrelation of these questions, the appeals will be disposed of in one opinion.

Andrew C. Edelman died March 10, 1921. He had no children. He left a will disposing of his estate as follows: To his wife Anna all his property for life "in lieu of her dower, if she should so elect." On the death of his wife, two farms, one known as the Pond farm, sold by testator in his lifetime, and the other as the Kocher farm, were given to his sister, Sarah Koch, together with all personalty found thereon; to her son, Frank Odenwelder, a property known as the Mansion House; to Lizzie Miller, sister of his wife, three farms, and a fourth one or $25,000 in lieu thereof in the event he sold it in his lifetime, which he did; he also gave her certain lots and the personalty on the properties; to his niece, Pearl Miller, daughter of Lizzie, his dwelling house with one acre of ground and all personalty thereon, and a tin box with its contents. At testator's death this box was found to contain liberty bonds and old money valued at almost $10,000. He gave the residue of his estate to his relatives, other than two nieces (whom he expressly disinherited), as the intestate laws provided. The effect of this disposition was to give it to his sister, Sarah Koch. He left a considerable estate, about $135,000 in personalty and $140,000 in realty. He named his wife and Lizzie Miller executrices.

The wife elected to take against the will. Her election, and what subsequently occurred, give rise to the problems we are called upon to solve, the main one being, whether there was a valid family settlement. If the conclusion be that there was, all other controversies are thereby ended.

The effect of the widow's election to take against the will, was to vest in her one-half of the estate, real and personal, and to greatly reduce what would go to Sarah Koch under the residuary bequest, as she would have to make up to the specific legatees and devisees, out of

the residue, their disappointment in the one-half reduction of their gifts: *Gallagher's App.*, 87 Pa. 200; *Ferguson's Est.*, 138 Pa. 208, 20 A. 945; *Vance's Est.*, 141 Pa. 201, 21 A. 643. In *Lonergan's Est.*, 303 Pa. 142, 146, 154 A. 387, we said: "If both specific and residuary legatees or devisees suffer because of the election [of surviving spouse to take against the will], the former must be made whole before the latter receive anything." This result would seem to have been lost sight of by the auditor and court below in reaching the conclusion they did, apparently because the matter was not pressed upon them.

On the 3d or 4th of May, 1921, after the widow's election, a meeting was held at Mrs. Edelman's residence. Its purpose, we are convinced, was to arrive at some solution and settlement of the difficulties created by the widow's election. The meeting was attended by Mrs. Edelman, Mrs. Miller, Pearl Miller, Mrs. Koch and Preston Koch, her husband, and Asher Seip, attorney for the estate, who died in 1935, while these proceedings were going on.

Mrs. Edelman, very likely guided by Mr. Seip, proposed a settlement to those present by which she would give up her one-half interest in the lands devised to the specific devisees, giving them immediate possession thereof in severalty, the specific devisees to surrender to her all their interest in the personalty. Mrs. Koch knew of the real estate, but inquired about the value of the personalty, and Mr. Seip informed her that the mortgages and the bonds amounted to in the neighborhood of $100,000. Pearl Miller testified he told Mrs. Koch the personal estate ran considerably over $100,000. At that time no inventory had been filed. It was explained to Mrs. Koch she would get the Kocher farm released from Mrs. Edelman's one-half interest. Mrs. Koch did not then agree to the settlement as proposed but asked for further time to consider it. A few days later Mrs. Koch, through her husband, notified Mr. Seip

that she would accept the terms suggested and she and her husband executed a full release of all demands against the estate.

In this paper, Mrs. Koch recited that she "has this day had and received of and from Anna R. Edelman and Lizzie Lenora Miller, executrices of the last will and testament of the said Andrew C. Edelman, deceased, full satisfaction and payment of all such sums or sums of money, legacies and bequests, as are given and bequeathed to her, the said Sarah J. Koch, by the said last will and testament of the said Andrew C. Edelman, deceased, and all interest accrued thereon; and therefore, the said Sarah J. Koch and Preston C. Koch, her husband, for themselves, their heirs, assigns, executors and administrators, do, by these presents, remise, release, quitclaim and forever discharge the said Anna Edelman and Lizzie Lenora Miller, executrices as aforesaid, and their heirs, executors, administrators and successors, of and from the said moneys, legacies and bequests, and of and from all actions, suits, payments, accounts, reckonings, claims and demands whatsoever for or by reason thereof, or of any other act, matter, cause or thing whatsoever." This release is dated May 5, 1921, and acknowledged the same day. The court and the auditor were of the opinion this release was not binding upon Sarah Koch to its full extent, because the only interest she received, as consideration for it, was the one-half interest in the farm devised to her, to which Mrs. Edelman was entitled by reason of her election, which interest was valued at $3,500, and that she gave up one-half of the personalty valued, so the court thought, at $67,000, and that full disclosure was not made by Mr. Seip at the meeting of the amount of the personalty and that Mrs. Koch was in ignorance of its true value. From a reading of the testimony we cannot draw the same inference as the court and the auditor did, because they failed to take into account how greatly Mrs. Koch's share of the personalty would be dimin-

ished by her having to make good to the specific legatees and devisees out of the personalty their disappointment due to the reduction of their specific gifts one-half, by Mrs. Edelman's election. When the value of the real estate is taken into account and the $25,000 due to Mrs. Miller, in lieu of the farm, which had been sold by the testator in his lifetime, and the expense of settling the estate, it is obvious that Mrs. Koch's share would have been small, if anything.

Following the meeting, Mrs. Edelman carried out her undertaking, so far as all of the specific devisees were concerned, making deeds to them for her one-half interest in the property devised to each. It is difficult to understand why she should have done this, unless that was the arrangement in which everyone in interest acquiesced. She made a deed to Mrs. Koch's nominee for the one-half interest in the Kocher farm, to Mrs. Miller for the one-half interest in the properties devised to her, appraised at $109,000, and Mrs. Miller paid her $10,000. She made a deed to Pearl Miller (Kunkel by reason of her marriage) for the real estate given to her and also to Mrs. Koch's son, Frank Odenwelder, for the one-half interest in the property devised to him. These deeds were made without money consideration except that paid by Mrs. Miller. Pearl Miller gave up her interest in the contents of the box.

The circumstance, which we think speaks loudest in support of the conclusion that a valid family settlement was entered into, is that Mrs. Koch in her lifetime never raised any question as to what had been done, never made any claim against Mrs. Edelman or the estate, but, on the contrary, expressed herself as well satisfied on several occasions. She lived until December 29, 1929, almost nine years after the settlement and after she signed the release. Not alone does her inertia stand out, but her husband asserted no claim until February 21, 1933, more than three years after her death and almost twelve years after the settlement, when he joined

in the petition of Warren Odenwelder, a son of his wife by a former marriage, for a citation on the executrices to file an account. This sleeping upon their rights, even if they had any, for so long a period under the circumstances here existing causes laches to rise and bars the way to any recovery now: *Cannon's Est.*, 330 Pa. 513, 199 A. 135; *Wallace's Est.*, 299 Pa. 333, 149 A. 473; *McGrann v. Allen*, 291 Pa. 574, 140 A. 552. See also *Barnes & Tucker Co. v. Bird Hill Coal Co.*, 334 Pa. 324, 5 A. (2) 146, and cases there cited.

We, therefore, conclude from what took place at the meeting in May, 1921, and what occurred following it, that a valid family settlement had taken place. We have consistently taken the view that family settlements are to be looked upon with favor and upheld when possible: *Walworth v. Abel*, 52 Pa. 370; *Appeal of Wilen*, 105 Pa. 121; *Palethorp's Est.*, 168 Pa. 98, 31 A. 885; *McCutcheon's Est.*, 283 Pa. 157, 128 A. 843; *Braunschweiger's Est.*, 322 Pa. 394, 185 A. 753; *Iacovino v. Caterino*, 332 Pa. 556, 2 A. (2) 828. "It is not necessary to the conclusiveness of the distribution actually made [in a family settlement], that there should have been any formal agreement among the parties relative to it": *Follmer's App.*, 37 Pa. 121, 124. Family compromises "may be sustained by the court, albeit, perhaps, resting upon grounds which would not have been considered satisfactory if the transaction had occurred between strangers": *Appeal of Wilen*, supra, p. 124. As to presumed family settlements and delay in questioning them, see *Cannon's Est.*, supra, where we said (p. 515) : "A family settlement may be presumed on the failure to account, acquiesced in over a long period of time. Family settlements are preferred by the law; . . . And when such settlements exist or are presumed to exist, an accounting is unnecessary."

The appeal No. 31 January Term, 1939, in which Preston C. Koch, executor of Sarah Koch, is appellant, from the award of certain amounts to the specific lega-

tees, Mrs. Miller and Mrs. Kunkel, from the direction of the court below that the inheritance taxes should be paid from the residue of the estate, and from the order that the estate should pay the costs, in view of our conclusion that a valid family settlement was made, ceases to be of consequence. It is dismissed; costs to be paid by the appellant.

In the appeals Nos. 33 and 42 January Term, 1939, by Pearl A. Kunkel and Walter R. Kunkel, executors of Anna R. Edelman, and by Lizzie L. Miller, surviving executrix of Andrew C. Edelman, the decree of the court below is reversed; costs to be paid by the estate of Sarah Koch.

### ORDER.

And now, September 26, 1939—The order as to costs heretofore made is modified as follows:

The costs shall be paid by Lizzie L. Miller, Surviving Executrix of Andrew C. Edelman, Deceased, and Pearl A. Kunkel and Walter R. Kunkel, Executors of Anna R. Edelman, Deceased, with the right in Lizzie L. Miller, Surviving Executrix, and Andrew C. Edelman, Deceased, and Pearl A. Kunkel and Walter R. Kunkel, Executors of Anna R. Edelman, Deceased, to recover any and all costs paid by them from the Estate of Sarah Koch, Deceased, which is hereby directed to make reimbursement of the payments made so far as it has assets.