# McIntosh's Estate.   McIntosh's Appeal.

*Will—Decedents' estates—Widow's election.*

Where a widow elects to take against a will, her substituted devises and bequests are a trust in her for the benefit of the disappointed claimants to the amount of their interests therein.

A testator devised and bequeathed certain real estate and " one third of all his personal property " to his wife for life with remainder to his daughter. He then added: " The above is intended to be and to be taken in lieu and bar of all shares, or third, or dower of my said wife in my estate, real, personal or mixed." He then gave certain other real and personal estate to his daughter, and various devises and bequests to his three sons by a former marriage. The widow elected to take against the will. *Held,* (1) that the word " above " referred merely to the gift to the widow, and that the daughter's remainder was not intended to be barred by the widow's election to take against the will: (2) that as to the personal estate there were no benefits intended for the widow in suspense, and consequently no fund for compensation and no disappointed legatees; (3) that as to the real estate the sons were disappointed claimants and were entitled to be compensated out of the personal estate.

*Trusts and trustees—Active trust—Rents.*

A gift of real estate to trustees, with a direction to pay the rents, after deduction of taxes and repairs, to testator's grandsons, is an active trust.

Testator gave a portion of his estate to trustees to collect the income and pay one half thereof to his grandson " if he continues sober and industrious," otherwise to accumulate. The other half was to be paid to the minor children of a deceased grandson. Testator further directed: " Should these children be separated, the above means for their support shall be divided equally per capita, and in case of necessity from sickness of any of the above named heirs, or should any of the children above referred to be desirous of a collegiate or classical education, said trustees are hereby empowered to use the income of this share for defraying such expense." When the youngest child came of age one half of the principal was to be paid to the grandson if living, and the other half to the two great-grandsons. *Held,* that the trust was an active one and must continue until the time of distribution designated by the will.

*Will—Children—Distribution.*

A gift to " James T. McIntosh and his children " gives the children equal rights in distribution with the father, and it makes no difference that elsewhere in the will " this share " is referred to as that of James T. McIntosh.

Argued Nov. 9, 1893.   Appeals, Nos. 292, 293, 294 and 295, Oct. T. 1893, by James T. McIntosh, Robert G. McIntosh, John S. McIntosh, trustee for the family of Alexander G. McIntosh

deceased, and John S. McIntosh, trustee of the minor children of Lauchlan J. S. McIntosh, deceased, from decree of O. C. Allegheny Co., Sept. T., 1892, No. 205, dismissing exceptions to adjudication of account of Lucretia M. McIntosh and John S. McIntosh, executors of Lauchlan McIntosh, deceased. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Adjudication of executors' account.

The will of Lauchlan McIntosh deceased was as follows :

" I give and devise to my beloved wife Margaret, for and during the term of her natural life, the house we are now living in, the carriage house, stable, ice house and all other buildings and improvements that are or shall be on the two acres of land whereon the above named buildings are situated, all furniture in house, all live stock and wheeled vehicles, and all steps, walks and roads to and from the above named premises ; and at my wife's decease, the above named property shall go to our daughter Lucretia Mott Martin, and her children.

" I also give and bequeath to my said wife, the one-third part of all my personal property, and at my wife's decease, it is my will that all the above devise and bequest shall go to our daughter Lucretia Mott Martin, the above is intended to be, and to be taken in lieu and bar of all shares or thirds or dower of my said wife in my estate, real, personal or mixed.

" Item : I give and bequeath to our daughter Lucretia Mott Martin, five houses and lots in the first ward, Allegheny city, valued by me at Forty-six thousand dollars, $46,000, known as ' Colonade Row.' To the $46,000 real estate, shall be added enough personal property to make her share equal to that of any one of the other three heirs, viz. : Alexander G., James T. and the heirs of Elspatious G.

" Item : I give, devise and bequeath to the family of my son Alexander G. McIntosh, [realty specified, and valued at $35,900.] Also : Enough personal property to equal the shares of either Lucretia M., James T. or Elspatious heirs.

" Mary S. wife of Alexander G. McIntosh, shall have and hold in trust but not sell, the real estate or any part thereof belonging to this share, she may collect and use the income from said real estate for the benefit of the family.

" The personal property belonging to this share shall be held in trust for the children of Alexander G. McIntosh by my daughter Lucretia Mott Martin and my grandson John S. McIntosh, and after the age of twenty-one years, each one who can establish a character for sobriety, morality and industry shall receive four thousand dollars $4,000 and this $4,000 shall be in lieu and bar of all claims to the income from the real estate and shall be charged (without interest) to those who have received said $4,000, at the final distribution of the real estate to which they shall share after the decease of my son Alexander G. McIntosh.

" Item : I give, devise and bequeath to my son James Tulloch McIntosh, [realty and stock in store specified, and valued at $52,056.42.]   Also : Enough personal property to make his share equal to any one of the other three heirs, viz.: Lucretia Mott, Alexander G., and the heirs of my son Elspatious G.

" Item : I give, devise and bequeath to the heirs of my son Elspatious Gregory McIntosh, the ' Klingensmith ' property [and other realty, specified and appraised at $35,535].   Also : As much personal property as shall be necessary to make the share equal to that of either Lucretia M. Alexander G. or James T. McIntosh.   Further it is my will that the said devises and bequests of this share, both real and personal shall be held in trust by Lucretia Mott Martin and John S. McIntosh for the use of the heirs as follows :

" To Robert, the surviving son of Elspatious G. McIntosh shall be given one-half the rents from the houses and court on Anderson street, Allegheny, after taxes and necessary repairs are paid.   And should he at any time establish a character for sobriety, morality and industry, by pursuing some lawful calling for five years continuously, he shall receive ten thousand dollars $10,000 from the personal property, and if he continue sober and industrious, the rents shall be given him as before, but if he be not sober and industrious, said rents shall not be given him but shall remain and accumulate in the hands of the above named trustees.   And should the said Robert die without children born in wedlock, his entire share shall revert to the original heirs of my estate and be divided according to law.

" For the support of the children of Lauchlan J., deceased, son of my son Elspatious G., shall be given the one-half of the

rents of the houses and court on Anderson St., 4th ward, Allegheny city, after taxes and necessary repairs are paid.

"Should these children be separated, the above means for their support shall be divided equally per capita, and in case of necessity from sickness of any of the above named heirs, or, should any of the children above referred to, be desirous of a collegiate or classical education, said trustees are hereby empowered to use the income of this share for defraying such expense.

"When the youngest of these children has reached the age of twenty-one years, a general distribution shall be made as follows :

"To Robert one-half of the remainder if living, if dead without heirs as described above, his share shall revert to my original heirs, viz.: Lucretia M., Alexander G., and James T. McIntosh.

"To the surviving children of Lauchlan J., a sum equal to that of Robert, which shall be divided equally to each, if none survive, it shall revert to my original heirs, the same as the share assigned to Robert.

"My daughter Lucretia Mott Martin, and my grandson John S. McIntosh are appointed executors of this my last will and testament. If either of the executors fails to qualify together they shall appoint a successor."

The opinion of the court below was as follows :

"Mr. McIntosh died July 24, 1891, testate, leaving a widow, Margaret, and one child by her, Lucretia M. Martin, and three children by a former marriage, Alex. G., James T. and Elspatious G. His estate, which was large, was accumulated after his second marriage.

After reciting the provisions of the will the opinion continues :

"After the execution of this will, Mr. McIntosh made valuable improvements on the Klingensmith property, devoted to the heirs of E. G. McIntosh, and thereupon executed a codicil by which he directed that the improvement so made should 'be valued or appraised' at his decease, and 'deducted from the money due the heir or heirs of such share.' The evidence adduced here shows them to have been worth $2,400 as of July 24, 1891. Mrs. McIntosh refused to take under the will.

"The questions submitted for decision are, whether or not

(1) the first gift to Mrs. Martin was conditioned upon the widow's acceptance under the will; and if not (2) to what extent, if any, that gift is a trust fund to secure compensation to those whom the widow's election disappointed; (3) the first gift to Mrs. Martin is independent of the second; and (4) a valid, active trust was created in the share given to the heirs of Elspatious G. McIntosh, deceased; (5) part of the real estate devised to Alex. G. McIntosh, being in Iowa where the widow takes one-half absolutely, it is insisted that the valuation placed by the testator on that real estate should be reduced to that extent for the purpose of equalization; and, (6) in the gift to 'James Tulloch and his children,' the word 'children' shall be construed as of purchase or limitation.

" (1) The two gifts made to Mrs. Martin were manifestly intended to be independent of each other and cumulative. The testator divided his estates into two parts and made independent dispositions of them. The gifts to Mrs. Martin thereout differ in their quality : the first is in remainder and the second in præsenti. The second is directed to be equalized with the shares given to her brothers out of presently available assets, whereas the first was made payable after the death of the widow. 'I give and bequeath to our said daughter, Lucretia Mott Martin,' said testator, 'certain real estate at a valuation of $46,000, and to this shall be added enough personal property to make her share equal to that of any one of the other three heirs.' It is plain that equalization was intended to be made, not by aid of the personal property bequeathed to Mrs. McIntosh and Mrs. Martin, for Mrs. Martin's interest in that was only in remainder and would not be available until Mrs. McIntosh's death, but out of the other part of the personal estate which would be presently available.

" (2) It will readily be conceded that the application of the expression 'the above,' upon which the argument for conditional gift in remainder to Mrs. Martin rests, must be ascertained by reference to what follows it in the paragraph in which it is used; for without that the expression would be insensible. To what then does the expression refer? In the first place it refers to one object, whereas there are two 'above'—an estate for life and an estate in remainder. 'The above is intended to be, and is to be taken in lieu or bar of' which of these? Dow-

er.   Taken by whom?   No other than the widow is mentioned. It is what is given to her—a life estate, not what was given to Mrs. Martin—a remainder—that was intended to be barred. It is precisely the same as though the testator had said, if the widow accepts 'the above' it shall be in lieu of dower.   She had no interest in the remainder ; there had been an absolute and independent gift of that to Mrs. Martin.   Had Mrs. McIntosh died before her husband there can be no doubt but that Mrs. Martin would have taken the one third of the personal estate absolutely.   Having survived, if she had accepted under the will, Mrs. Martin would have taken the whole on her death, or by agreement between them they could have divided it on the basis of the cash value of their respective estates—the widow taking the one third and Mrs. Martin the other two thirds absolutely.   In any event, Mrs. Martin would have received exactly what testator intended she should have.

"The suggestion that the relationship of Mrs. Martin, as the only child of the widow, can affect the question of construction has no merit.   That fact might explain the expression of, but cannot create, a condition.   Here there was neither an express nor implied condition attached to the gift; it was independent and absolute on its face, and extrinsic evidence is incompetent to show an intention to create such condition.   It is clear that Mrs. Martin was intended to be a favored object of testator's bounty.   Nothing short of express words or necessary implication would justify the inference that testator intended to coerce his widow into acceptance under his will through her affection for her daughter, for such purpose would have been not only inconsistent with the spirit of the statute which gave her a right of election, but with that fair and humane dealing which he owed her as husband.   But neither the language used nor the value of the gift justify such inference.   The advantages of refusal were so great that there could have been no temptation even to acceptance.   The bequest here is totally unlike that in Carr's Estate, 13 ¿ Pa. 354, which was expressly conditioned upon the widow's acceptance under the will.

"If, then, the gift to Mrs. Martin was absolute, it was accelerated by the widow's refusal to take under the will; and she thereby became entitled to some present estate, but to what? Certainly, as between her and the widow, the latter could no

more take the whole of her third out of that portion of the personal property set apart to her by the will than out of the homestead. She must take, as though no will had been made, out of the bulk of the estate, and the other beneficiaries take the residue as constituting the whole estate, and as though the widow were dead, in the interests contemplated by testator. If the legacies be of equal grade they must abate proportionately.

"As between Mrs. Martin and her brothers, the refusal of the widow to take under the will presents a question which turns upon the application of the principle that ' where a widow elects not to take under a will her substituted devises and bequests are a trust in her for the benefit of the disappointed claimants to the amount of their interest therein. A court of equity will sequester the benefit intended for the widow to secure compensation to those whom her election disappoints.' Gallagher's Appeal, 87 Pa. 200; Ferguson's Appeal, 138 Pa. 208. Are there substituted devises and bequests here out of which compensation can be made? It is clear that so far as the personal estate is concerned there are not. By her election the widow became entitled to a share in her husband's estate as though he had died intestate, and the will operates on the rest as though she were dead: Vance's Estate, 141 Pa. 201. Assuming then that her share has been taken out, what remains constitutes the whole personal estate for distribution amongst testator's children and grandchildren as provided by the will; and of this Mrs. Martin is entitled to one third and the four children of testator, including Mrs. Martin, are entitled to the other two thirds in the proportions specified in the will. The result, so far as the bequest to Mrs. McIntosh for life, and Mrs. Martin in remainder is concerned, is that Mrs. McIntosh will get the exact equivalent in cash of her life estate, and Mrs. Martin of her remainder. To illustrate: Suppose this bequest to amount to $30,000; on the principle recognized in Datesman's Appeal, 127 Pa. 348, the cash value of the widow's life estate would be one third, or $10,000; and that of Mrs. Martin, remainder two thirds, or $20,000.

"There are then no benefits intended for the widow in suspense; both she and Mrs. Martin get exactly what the testator intended they should have, and there can consequently be no fund available for compensation and no disappointed legatees.

" But the situation in respect to the real estate is different. The effect of the widow's election was to increase the share of Mrs. Martin in the homestead by two thirds of the rental value, and to decrease that of the devisees in the other real estate by one third, during the widow's life, and thereby to change the proportion in which testator intended they should take. The gain to Mrs. Martin represented the ' benefits intended for the widow,' ' her substituted devise,' and therefore a trust fund to secure compensation to those whom the widow's election disappointed.

" It is conceded that there are disappointed claimants, but are they entitled to compensation out of this fund ? It would seem clear that they are. ' The principle is well settled that equity will depart from the literal provisions of a will in order to carry out a superior or preferred intent of the testator which would otherwise fail. But the object is not to produce a distribution which the court may think more equal or equitable, but to approximate as closely as possible to the scheme of the testator, which has failed by reason of intervening rights or circumstances.' It will be conceded that a ' superior or preferred intent ' of the testator was that his beneficiaries should take in the proportions prescribed in his will, and that these proportions have been changed by the widow's election. Mrs. Martin has gained what from the face of the will she was not intended to have, and the other devisees have lost; testator's scheme has to this extent failed. Mrs. Martin's gain is the widow's ' substituted devise,' and therefore a trust fund which should be used· to secure compensation to those whom the widow's election disappointed, and thus ' approximate as closely as possible to the scheme of the testator.'

" With a view to save the expense of a regular proceeding in sequestration, the court suggested that the parties agree upon the cash value of this ' substituted devise,' and this having been done, the amount is deducted from Mrs. Martin's share in the personal estate.

" (3) It was conceded that the legal title to the share of Elspatious G. McIntosh's heirs was vested by the will in trustees; but it is insisted that in respect of all this share, with possibly the exception of the Anderson property, the trust was dry, and therefore executed.

"It is very clear that testator created a valid active trust in the Anderson street property. The gift to the trustees necessarily implied the collection of rents, and therefore the custody of the property and some discretion in respect to the payment of the net income.

"In respect to the rest of this share (less $10,000 cash given Robert McIntosh), the creation of an active trust is not so plainly, but is sufficiently expressed. It is conceded that the will vested in the trustees the legal title. The scheme of the trust declared gave these trustees a large discretion, and necessarily imposed on them active duties. They were 'empowered,' 'in case of necessity from sickness of any of the heirs' of E. G. McIntosh, deceased, or, 'should any of the children of' L. J. McIntosh, deceased, 'be desirous of a collegiate or classical education,' 'to use the income of this share.' Out of what are these expenses to be paid? The expression, 'this share,' is the same as that used in the gift to the trustees, and, standing by itself, would of course include the whole 'share' of the heirs of E. G. McIntosh, deceased. But its use here was evidently in a limited sense, for the testator had already specifically set apart the net rents of the Anderson street property— one half to Robert McIntosh, and the other half 'for the support of the children' of L. J. McIntosh, deceased. The provision for defrayal of expenses of sickness and education immediately follows this, and was evidently intended as additional and extraordinary, and to be paid out of the income of the share given to these 'heirs' of E. G. McIntosh, deceased. On no other theory of construction can the disposition of 'this share' be made effectual. It will thus be seen that the income of the whole of 'this share' is pledged for the defrayal of expenses which may become necessary in case of sickness of any one of the heirs of E. G. McIntosh, deceased, or the education of either of the children of L. J. McIntosh, deceased, until the youngest attains majority. An adequate reason for the creation of this trust is found in the minority of two of the heirs of the cestui que trust, either of whom may become entitled to the benefits; and an additional reason is suggested by the evident belief of the testator, whether justified by facts or not is immaterial, that the industry and sobriety of the other needed to be tested by time. The nature of the trust is such that it must continue

in respect of the whole of 'this share.' Who will receive the benefit, and how much will be required of the income to meet the necessary expenses of sickness or education, it is impossible to foretell. From the nature of the case there will be inequality. One may receive nothing or the whole. It will thus be seen that each cestui que trust is interested in the continuance of the trust in 'this share' as a whole: Hinkle's Appeal, 116 Pa. 490. If the trust be valid as to one, it must necessarily be valid as to all. The accumulations, if any, will be simply temporary, and in the interest of judicious management: Hibbs' Est., 143 Pa. 217.

"That this was a valid, active trust, then, seems clear. There are sufficient words used, a definite object, and ascertained subjects, and it is not inconsistent with public policy: Marshall's Est., 147 Pa. 77.

"(4) It was conceded in argument that the gift to 'James T. McIntosh and his children' would, standing alone, give the latter equal rights in distribution with their father. This is the leading and operative clause, and the word 'children' being of purchase must be so construed, unless a contrary intention can be gathered from the whole will. That it was used in its primary sense here is strengthened by the fact that in every other instance in which it appears it is undoubtedly used as a word of purchase, while the word 'heirs' is used as a word of limitation. But counsel insist that because 'this share' is elsewhere referred to as James T. McIntosh's, the word 'children' must be treated as a word of limitation or succession. The implication is not necessary. The leading and operative clause is, as already seen, that to 'James T. McIntosh and his children,' and the natural inference is that James T. McIntosh's name was simply used by way of convenient reference. Similar use was made of the name of Alexander G. McIntosh, and yet no one intimates that he can justly claim a share. Being fathers, their selection as representatives was but natural, and could not be construed to take away benefits which had been expressly given their children."

Distribution was decreed in accordance with the opinion. Exceptions by appellants were dismissed.

*Errors assigned* were dismissal of exceptions, and decree, quoting them.

*A. M. Imbrie* and *Samuel McClay, William M. Watson* and *S. B. Donaldson* with them, for appellants, cited: Middleswarth's Admr. v. Blackmore, 74 Pa. 414; Findlay v. Riddle, 3 Bin. 150; Schott's Est., 78 Pa. 43; Hitchcock v. Hitchcock, 35 Pa. 393; Postlethwaite's Ap., 68 Pa. 478; Marshall's Ap., 2 Pa. 388; Rewalt v. Ulrich, 23 Pa. 388; Fitzwater's Ap., 94 Pa. 141; Gallagher's Ap., 87 Pa. 200; Young's Ap., 108 Pa. 17; Ferguson's Est., 138 Pa. 208; Vance's Ap., 141 Pa. 201; Patterson's Ap., 128 Pa. 269; Yarnall's Ap., 70 Pa. 335; Ogden's Ap., 70 Pa. 501; Barnett's Ap., 46 Pa. 392; Earp's Ap., 75 Pa. 119; Biddle's Est., 28 Pa. 59; Mickley's Ap., 92 Pa. 514; Stevenson v. Fox, 125 Pa. 568; Caldwell v. Skilton, 13 Pa. 152; Haldeman v. Haldeman, 40 Pa. 29; Potts's Ap., 30 Pa. 170; Price v. Taylor, 28 Pa. 95; Cooley, Const. Lim. 210; Washington's Est., 75 Pa. 102.

*John D. Shafer*, for appellee, cited: Kennedy v. Nedrow, 1 Dal. 418; Doebler's Ap., 64 Pa. 15; Ferguson's Est., 138 Pa. 219; Vance's Est., 141 Pa. 201.

### JAMES T. McINTOSH'S APPEAL.

PER CURIAM, November 14, 1893:

The questions presented by this record have been so fully considered and so satisfactorily disposed of by the learned president of the orphans' court, that further discussion of them is unnecessary. We adopt his opinion and affirm the decree thereon.

Decree affirmed and appeal dismissed with costs to be paid by appellant.

### APPEAL OF ROBERT G. McINTOSH ET AL.

PER CURIAM, November 14, 1893:

These cases were argued with James T. McIntosh's Appeal, No. 292 of this term, and, for reasons stated in opinion just filed in that case, these decrees are affirmed on the opinion of the court below, and appeals dismissed with costs to be paid by appellants.