Lonergan's Estate.

Argued January 19, 1931.   Before WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*Daniel C. Donoghue,* with him *Henry I. Fox,* for appellant.—The parties ultimately entitled to receive the $50,000 are not presently ascertainable because the widow's power of appointment survives her election to take against the will: Gallagher's Est., 76 Pa. 296.

Appellees are not entitled to present payment of the amounts conditionally given to them: Disston's Est., 257 Pa. 537; Key's Est., 4 Pa. Dist. R. 134; Reighard's Est., 283 Pa. 140; Feeney's Est., 293 Pa. 273; Loew's Est., 291 Pa. 22.

The effect of a widow's election to take against a will is the termination of any estate to which she would have been entitled under the will: United States v. Field, 255 U. S. 257; McCord's Est., 276 Pa. 459.

It would be inequitable to the residuary legatee to give the appellees at present the fund of $50,000 when justice can be done to them and the exact intention of the testator consummated by awarding the sum of $50,000 to the executor, in trust, the income from that

fund to be paid to the residuary legatee during the actual life of the testator's widow: Portuondo's Est., 185 Pa. 472; Ferguson's Est., 138 Pa. 208.

*Francis K. Swartley,* with him *Alfred R. Haig,* for appellee.—The widow's election destroys the will as to her, and she must take just what the law would give her had her late husband died intestate: Cunningham's Est., 137 Pa. 621; Disston's Est., 257 Pa. 537.

OPINION BY MR. JUSTICE SIMPSON, March 31, 1931:

Testator died leaving a widow and collateral heirs. His estate amounted to nearly $1,500,000, of which, under the terms of the will, the residuary legatee would have received about $900,000. The widow elected to take against the will, the effect of which was that the residuary legatee's share was reduced about $500,000, but none of the other legatees was affected thereby. The Continental-Equitable Title & Trust Company is the executor of the will, the seventh paragraph of which provides as follows:

"Seventh. I give and bequeath to my executor the sum of $200,000 in trust to invest the same and to pay the net income therefrom semiannually unto my wife, Mary Elizabeth Lonergan, for and during all the term of her natural life; and at her decease to pay $50,000 of said principal sum as my said wife shall specifically direct in her last will and testament; if, however, she shall not so specifically bequeath said sum of $50,000, then I direct my executor to divide the said sum of $50,000, after the decease of my wife, as follows: $5,000 unto her sister, Lena McCall, if she shall survive my said wife; $25,000 unto her son, Rev. John W. McCall; and the balance unto her son, William H. McCall. The remaining $150,000 shall, upon the decease of my said wife, form a part of my residuary estate."

Upon the theory that the power of appointment given to the widow "is a testamentary gift" which she loses

"by having elected to take against the will," the court below ruled against the residuary legatee's contention that the $50,000 should be awarded to the executor in trust, with directions to pay the income to the residuary legatee so long as the widow lived. It therefore decreed immediate distribution of the $50,000 to Mrs. McCall and her two sons, and because of this the residuary legatee prosecuted the present appeal. The only question to be decided is whether or not that award is correct, in view of the fact that the widow is still living.

It must be admitted that our decisions are not harmonious regarding the questions as to when gifts to legatees will be accelerated, because a widow, who is a life tenant of the gifts, elects to take against the will, and when such gifts to the widow will be sequestered, for the period of her life, for the benefit of the disappointed legatees and devisees whose shares have been reduced by reason of her election. This lack of harmony is almost entirely due to the decisions in Ferguson's Est., 138 Pa. 208, and Vance's Est., 141 Pa. 201, which hold that the right to sequestration is not to be applied in favor of remaindermen, unless the will being construed shows that they were the favorite objects of testator's bounty. It is not clear how that would appear from a will, unless the residuaries were his widow, next of kin or heirs at law (which no one of the present litigants is) ; or unless it is to be gathered from the fact that the larger portion of the estate is given to the residuaries, which test, if applied here, would tell in favor of appellant, since, by the will, he would get nearly twice as much as all the other parties in interest combined.

The basic error in the cases referred to consists in giving conclusive effect to the fact that the sequestration of gifts to the widow for the benefit of the residuaries, who alone are disappointed by reason of the widow's election, would change the usual order in distributing an estate, which is that specific legatees are first to be paid in full and residuaries are to receive only that

which is left. When a distribution is to be made in accordance with the terms of a will, of course this order must be followed; but, so far as it results from the widow's election and not because of the language of the will, it never is made, indeed cannot be made, under the terms of the will only. If both specific and residuary legatees or devisees suffer because of the election, the former must be made whole before the latter receive anything; but where, as here, there is ample to pay the specific legatees at the time fixed by the testator, they have no right to complain because they do not receive their gifts before that date. If earlier paid, they would actually get more than the testator intended, for they would receive at once the amount of their legacies, which they could invest and get in addition the income therefrom, for the time between the actual receipt of the money and the date when, in accordance with the will, they would have received it. As said in Jones v. Knappen, 63 Vt. 391, 395, "these [specific] legatees will receive just what the testator set apart for them, if the payment of their legacies is postponed until the decease of the widow."

The error in Ferguson's Estate and Vance's Estate is well exemplified in the illustration given in the latter for sustaining the conclusion there reached. It is said, at page 213: "If the general legacies were $100,000 and the residue at the time of testator's death $5,000, the sequestration of the interest on the former for the benefit of the latter would give the latter an income of one hundred per cent a year during the widow's life." The inappropriateness of that statement is evident. No one ever suggested, so far as we are aware, that the general legacies should be sequestered for the benefit of the residuaries under any circumstances; but only that the gifts to the widow should be, if the residuaries are the only ones who suffer by reason of her election. Moreover, admittedly, if the gifts to the widow are sequestered, it will always be in accordance with equitable

principles (McIntosh's Est., 158 Pa. 528), to make good the disappointment of those injured by the election, and to the extent of that injury only. Applying this rule to the illustration referred to, if the gifts rejected by the widow had amounted to $100,000, the decree, so far as concerned the residuary legatees, would state that when they received the $5,000 given them by the will, the sequestration in their favor would end, because they would then have received all to which they were equitably entitled. Courts of equity are not bound by such phrases as that "the election of the widow is equivalent to her death," as the opinion writer in the cases being reviewed held that he was, but decide in each case as equity and good conscience require, so that exact justice, as nearly as this is possible in human affairs, may be done to all parties in interest. This, indeed, is said to be the justification for the existence of such courts. The orphans' court, within the sphere of its jurisdiction, is a court of equity: Nimlet's Est., 299 Pa. 359.

So far as we have been advised, or have been able to discover, the above stated basic thought in Ferguson's Estate and Vance's Estate has never been approved under similar circumstances, either here or elsewhere, though these cases have not infrequently been referred to both here and elsewhere. They have been cited for the proposition that "an election by a widow is equivalent to her death"; but, as said in Ostrom v. Datz, 274 Pa. 375, 379, in direct antagonism to the mistaken conclusion of Ferguson's Estate and Vance's Estate, the legacies in favor of the widow should, in case of her election to take against the will, be sequestered for the benefit of the remainderman, if there is sufficient to pay the specific legacies in full and only the residuaries are affected by her election. In Feeney's Est., 293 Pa. 273, one of the latest of our cases dealing with this subject, it is said at page 285: "This doctrine of acceleration, however, is not an arbitrary one, but is founded, in the case of a will, on the presumed intention of the testator

that the remaindermen shall take on the termination of the previous estate notwithstanding the prior donee may be still alive, and is applied in the promotion of the presumed intention of the testator and not in defeat of his intention......and when it is the evident intention of the testator that the remainder shall not take effect until the actual expiration of the life of the prior donee, the remainder will not be accelerated." What a testator's intention is must be gathered from the language of his will only, and not from a possible, but unexpressed, intent (French's Est., 292 Pa. 37; Ludwick's Est., 269 Pa. 365); hence his estate should be distributed, notwithstanding the election of the widow to take against the will, as nearly as possible in accordance with what he says, and so we declared in Disston's Est., 257 Pa. 537, 543, when we said, in dealing with the question now under consideration, that "the effort must be to find and carry out the testator's chief intent with a minimum disturbance of the general plan of the will." It is evident, therefore, that when the specific legatees cannot possibly be harmed by the election of the widow, but the residuaries will be, that "minimum disturbance of the general plan of the will" can be effected only by leaving its provisions as to the former exactly as the testator declared them, and by sequestering the gifts rejected by the widow so as to benefit the latter, who have been injured, to the extent of but not exceeding the injury sustained by them. So far as Ferguson's Estate and Vance's Estate, supra, are in conflict with the views expressed in this paragraph, which are all taken from our later cases, those two opinions can no longer be considered as expressing the law of this State.

Turning now to the seventh paragraph of the will (hereinbefore quoted), out of which the present controversy arises, we find that appellees will get everything the testator intended by receiving their legacies when the widow dies. It will be noticed that their right to get anything from testator's estate is contingent on the

action or inaction of the widow, and that they are relatives of hers and not of testator. He probably thought that she would provide for them, so far as was necessary, during her life (as she is better able to do now than she would have been, had she taken under the will), and, if deserving and needy, she would, by her will, appoint the $50,000 to them or for their benefit in proportion to their needs; if not, that she would appoint to other persons or charities, and, if she did neither, it would be because she was satisfied with the division specified in the will. Testator was particularly careful, therefore, not to give anything to them at the time of his death, but, in every instance, the gift was to take effect "after the decease of my wife." As she is still alive, the court below erred when it directed the immediate payment of the $50,000 to appellees.

We have purposely refrained from deciding whether the election by the widow operated to defeat her right to appoint. That can best be determined when the fund is up for distribution, following her death. If no appointment is made by her, no question will arise; if she makes one, then every interested party can be heard. It may not be inappropriate, however, to call attention to a number of authorities which will have to be considered at that time. United States v. Field, 255 U. S. 257, decides that a general power of appointment by will does not of itself vest any estate in the donee of the power. In 31 Cyc. 1038, it is said that "A power does not imply ownership; it is not an estate or interest." "The election of the widow [to take against the will] does not destroy the right of the decedent to make a will and appoint an executor. The entire personal estate, bequeathed or not, vests in the executor in trust for administration and distribution": Gallagher's Est., 76 Pa. 296, 299, quoted with approval in Heineman's App., 92 Pa. 95, 99. In neither of these cases, however, does the widow appear to have been an executrix. And in Moody's Lessee v. Fulmer, 3 Grant 17, it is said that

the resignation of one named as executor does not defeat his right to execute a power given to him by the will, unless it is given virtute officii.

The decree of the court below is reversed in so far as it directs present distribution of the $50,000 referred to in the seventh paragraph of testator's will, and it is ordered that that sum be held by the executor as trustee, with the duty of investing it and keeping it invested and of paying the income therefrom to Cardinal Dennis J. Dougherty during the lifetime of the widow, to be distributed by him among such charities in the Philadelphia Archdiocese, as he, in his absolute discretion, shall select as most worthy of testator's benefaction. Upon the death of the widow, the executor is directed to file its account, so that the court may distribute the $50,000 to those then found entitled thereto. The costs of this appeal are to be paid by appellees.