## Klingerman Estate

*George J. Vanderslice*, for petitioner.

*H. B. Smith*, for respondent.

KREISHER, P. J., June 23, 1952.—Austin R. Klingerman died August 28, 1951, testate, a resident of the Town of Bloomsburg, this county, who left to survive him as his only heirs-at-law a widow and two children born of a previous marriage.

In addition to a small amount of personal property, he was the owner of a dwelling located at 265 East Eighth Street, Bloomsburg, with a fair market value of $8,000.

Shortly after his death his last will and testament, dated in September 1934, was duly probated in the office of the register of wills of this county, and in accordance with the terms thereof, his two children were issued letters testamentary as executors of his estate. The will, after directing payment of all just debts and funeral expenses, provided as follows:

"I. I give and bequeath to my wife, Mary, all the fixtures, furniture and personal property that we have bought jointly, since she became my wife. She can remain in the home at #265 East Eighth Street, Bloomsburg, Columbia Co., Penna., so long as she remains my widow; however if she so desires she can remove to another abode, taking only such furniture and personal property that we bought jointly. If she remains in her present home until her death, as my widow, she can have the use of all personal property that was mine before we married.

"II. I give and bequeath to my wife, Mary, the sum of Fifteen Hundred Dollars ($1500.00) as soon after my death as the same can be reasonably paid to her.

"III. I hereby will and direct that should my wife, Mary, marry then my estate to be settled and divided equally between my two children, Paul Klingerman and Ruth Brader.

"IV. I hereby will and direct that the executors of my estate are to pay all taxes and insurance premiums so long as the estate is not settled.

"V. I hereby will and direct that the balance and residue of my estate after the death of my wife or in the event that she remarries be divided equally between my son Paul Klingerman and daughter, Ruth Brader, executors of this my last will and testament."

The executors proceeded upon the performance of their duties by making an inventory and appraisement of the personal property, which consists of a note against the daughter in the amount of $1,000, with a small amount of unpaid interest, a share of the Columbia County A. H. & M. Association stock, valued at $50, a 1940 Chrysler sedan valued at $345 and contents of the home, making a total appraisement of $1,593.32.

The widow has filed an election to take under the will, and has presented her petition for her family exemption of $750.

The executors have filed a first and partial account, the same having been confirmed absolutely, showing a balance of only $187.97, so that in addition to the credits claimed in the account, there is still due and unpaid the legacy mentioned in the will of $1,500 to the widow, the family exemption of $750, the transfer inheritance tax, estimated at $140, the real estate taxes for 1952, estimated at $78.05, being based on the 1951 tax, an insurance premium insuring the homestead, of $40 and remaining costs of administration of approximately $800.

Based upon these facts, the executors have filed with the court a petition under section 543 of the Fiduciaries Act of 1949, requesting that they be directed by the court to expose said homestead to public sale in order to settle and pay the above-mentioned items. In addition thereto, the executors claim that the homestead is in poor repair and rapidly depreciating, and that to continue to hold the property will necessitate considerable expenditures for repairs.

The widow filed an answer to the petition admitting the matters of fact set forth therein, but states that she is more than 70 years of age and desires to remain testator's widow and continue her residence in the homestead for the remainder of her life, and therefore, she desires that the executors be directed to mortgage the premises in such amount as is required to pay such charges as are now due and will fall due in the future for the probable duration of the widow's life.

Section 543 of the Fiduciaries Act of April 18, 1949, P. L. 512, provides:

"When the personal representative is not authorized to do so by this act or is not authorized or is denied the power to do so by the will, if any, or when it is advisable that a sale have the effect of a judicial sale, he may sell any real or personal property of the decedent, including property specifically devised, at pub-

lic or private sale, or may pledge, mortgage, lease, or exchange any such property, or grant an option for the sale, lease, or exchange of any such property, under order of the orphans' court of the county where letters testamentary or of administration were granted, upon such terms and upon such security and after such notice as the court shall direct, whenever the court shall find such sale, pledge, mortgage, lease, exchange, or option to be desirable for the proper administration and distribution of the estate."

The comment under this section states:

"It is advisable that the Orphans' Court be granted broad power to authorize disposition of real estate. This section will take the place of several provisions of the 1917 Act, including Section 16, which authorizes sales and mortgages for payment of debts."

It has been held in Biddle Estate, 74 D. & C. 470, that:

"There no longer exists any such proceeding as a 'sale of real estate for payment of debts'. Not only is such a proceeding no longer necessary, but it would be definitely contra the changed statutory policy toward real estate."

The sole inquiry in these proceedings, in our opinion, under the above quoted act of assembly, is to decide the most desirable procedure for the proper administration and distribution of the estate, keeping in mind, however, the context of the will as a whole and the true intent of testator by the words used in the will. It is a matter of common knowledge that when the contents of a will are clear that the court need not resort to rules of construction. It is likewise a matter of well established law that in order to determine the true intent of testator, the will as a whole must be considered. Upon an examination of this will in question, the plan or scheme set forth therein for the settlement of testator's estate seems to be that the widow

is the primary object of testator's bounty, so long as she remains his widow, and that the two children by a previous marriage are secondary in testator's scheme or plan.

Hunter, in Volume 1, p. 388, sec. 10 (*a*) recognized the distinction between a license and an estate, and under the scheme of testator's will, it appears that the widow is given a license of occupancy of the homestead for the remainder of her life, so long as she maintains her widowhood.

In Geary's Estate, 55 D. & C. 381, 394, it is stated:

"Testator did not intend to vest in respondent an estate of any kind in his residence, but intended merely to confer upon her a license or personal privilege to occupy the residence for a period of two years. There was no grant or devise of any interest in the residence which could have been conveyed by respondent or which would have been liable to a judgment and execution by any creditors of respondent, if any there might have been."

Likewise in the instant case there is no estate vested in the widow, and therefore, the two children are not remaindermen in the true sense of the word, but merely residuary legatees. They have no vested interest, but merely get what is left after the primary intention of testator has been accomplished. Even if we considered the widow a life tenant and the two children remaindermen, the widow would be entitled to receive all that testator directs she should receive in the will, so far as it is possible to carry out the intention of testator. Her position in regard to this estate is much more advantageous than that of the children. The reason for this conclusion is stated in Nirdlinger's Estate (No. 2), reported in 327 Pa. 171, in an opinion by Mr. Justice Schaffer, on pp. 173 and 174, wherein it is stated:

"The foundational reason for this conclusion is that in nearly all instances of long continuing trusts, the life tenants are the primary objects of the bounty of testators, and their incomes should be preserved to them, as far as it is possible to do so, even though it may result in ultimate diminshment of principal to be paid to far off remaindermen. Life tenants should not be required to starve in order that remaindermen may ultimately feast."

The executors contend that the widow should pay rent for the occupancy of the homestead, because testator specifically stated that the executors are to pay all taxes and insurance premiums so long as the estate is not settled, and did not direct the widow to pay no rent. However, the will nowhere states that the widow should pay rent for her occupancy of the homestead, and to so hold, in our opinion, would be diametrically opposed to testator's plan or scheme set forth in the will. See Sullivan's Estate, 86 Pa. Superior Ct. 241.

We believe that because of the widow's advanced years, and knowing how persons of this age are reluctant to leave their home and take up a new abode, that to sell this property and dispossess this widow would not be carrying out the wishes of testator as expressed in his will. Likewise, there is no immediate compelling reason for such action. We can conceive how at some future date such action may become necessary, as it is apparent that these executors will have no income to reduce a mortgage indebtedness, but it is our opinion that such is not the requirement at the present time.

To place petitioners' interpretation upon the words contained in the will would not be carrying out the express plan and scheme, and it would in our opinion be holding that the widow receive virtually nothing under the first paragraph of the will.

The court has been informed that this property has a fair market value of $8,000 to $10,000, and under present conditions we believe that a mortgage of at least $4,000 could be placed upon the premises, which amount would be more than ample to pay the family exemption, the specific bequests, the accrued charges and provide considerable reserve to pay taxes and insurance premiums, and make minor repairs in the future.

In addition to the foregoing we wish to point out that under Accounting and Distribution, as set forth in section 751 of the Fiduciaries Act of 1949, 20 PS §320.751, under the Rights of Distributees, it is provided as follows:

"General rules. Except as otherwise provided by the will, if the assets are insufficient to pay all claimants and distributees in full, the shares of distributees, without distinction between real and personal estate, shall have priority of distribution in the following order:

"(1) Property specifically devised or bequeathed to or for the benefit of the surviving spouse; . . .

(6) Property devised or bequeathed in a residuary clause; . . .".

It is stated in the comment under this section that to a large extent the same is declaratory of existing case law, and the comment points out that this new section eliminates any distinction between real and personal property. It goes without saying that residuary legatees are at the end of the list for all practical purposes, and the existing case law holds that when distribution is made in accordance with the terms of a will, specific legatees are required to be paid in full before residuary legatees receive anything: In re Lonergan's Estate, 303 Pa. 142.

From the foregoing we make the following

404

## Order of Court

And now, to wit, June 23, 1952, the prayer of the petition requesting authority to expose testator's real estate to public sale under section 543 of the Fiduciaries Act of 1949 is denied, and under authority of the act of assembly it appearing to be desirable to mortgage the premises for the proper administration of the estate, it is ordered, adjudged and decreed that the executors shall forthwith execute a bond and mortgage to be secured by the real estate mentioned in the petition, in such an amount as shall be necessary for the proper administration of the estate, in accordance with the terms, provisions, plan and scheme set forth in testator's last will and testament.