## Ramey Estate

*Fox, Differ, DiGiacomo & Lowe,* and *William* F. *Fox,* for accountants.

*H. Lyle Houpt,* for objector.

TAXIS, P. J., September 23, 1960.—. . . A question for determination has been presented requiring interpretation of item fourteenth of the will. Paragraphs fifth through thirteenth of decedent's will provide for pecuniary legacies totalling $7,000 given to various relatives and friends.

Said paragraph fourteenth provides as follows:

"The cash bequests in the Fifth Paragraph through the Thirteenth Paragraph inclusive are *to be paid out of, and only out of cash on hand at my death.* Under no circumstances is any of my property to be sold to satisfy the bequests. *If no cash is available, the said bequests are to be adeemed."* (Italics supplied.)

Mary Anne Ramey, the widow, has elected to take against the will, which election has been duly filed and recorded. By reason of said election, the trust of the residue for the widow is inoperative. Testator was survived by issue, a son, Robert Franklin Ramey, named as succeeding life beneficiary of the trust. He is still living and is of full age, and the trust for him becomes operative.

At the time of his death, decedent had on deposit in the Cheltenham National Bank the sum of $6,106.36.

Since where there is an election to take against the will, the plan of distribution must be as close an approximation of the plan of the will as is possible. Therefore, we must first determine what is the plan of the will disregarding the election. The effort must be to find and carry out testator's chief intent with a minimum disturbance of the general plan of the will: Lonergan's Estate, 303 Pa. 142.

Contrary to the scheme contemplated by section 751 of the Fiduciaries Act of April 18, 1949, P. L. 512, because otherwise provided by the will, the general pecuniary legatees are to yield priority in order of abatement to residuary legatees. What else could be meant by the words: "Under no circumstances is any of my property to be sold to satisfy bequests. If no cash is available, the said bequests are adeemed." This language specifically gives priority to the residuary legatees under all circumstances. It is equivalent to saying: "Pay the bequests only if there is sufficient cash to do so without selling any other estate property." Under present circumstances, however, the bequests can be paid only if other property is sold, because the $6,106.36 on deposit in the Cheltenham National Bank is not even sufficient to pay administration expenses, family exemption, debts and taxes, which amount in total to $9,918.07. Therefore, the

bequests are void by specific direction, and the $6,106.36 cash deposit cannot be considered as being cash available for payment of the pecuniary legacies. Otherwise, the express intention of testator to favor residuary legatees, even to the extent of voiding general pecuniary legacies, would be defeated. This reasoning is supported by the general plan of testator's will whereby in the order indicated he (1) provides for payment of debts and funeral expenses, (2) makes certain cash bequests, but conditions their payment upon a sufficiency of cash to make payment without a sale of noncash assets, and (3) disposes of the rest, residue and remainder of his estate, real, personal and mixed. In effect, testator has not only expressed an intention to bequeath certain general pecuniary legacies but a paramount intention to protect the residuary estate from bearing the payment thereof. The general pecuniary legacies are directed by testator to be paid from a particular estate asset, namely, cash; but, in the event of a deficiency of cash, are not to be paid at the expense or loss of the residuary legatees. This provision is contrary to the statutory scheme as noted above, but the statutory scheme is subordinate to a contrary expression of intent in the will.

The foregoing interpretation accords with the reasoning that testator wanted to dispose of his cash on hand in payment of expenses, first, and certain general pecuniary legacies, second; but that the latter were to be paid only if sufficient cash remained for their payment.

If the fourteenth paragraph had read: "The cash bequests in the Fifth Paragraph through the Thirteenth Paragraph inclusive are to be paid out of and only out of cash on hand at my death," without any more, perhaps a reasonable interpretation would be that the only and decisive factor should be whether or not there was sufficient cash on hand at death. But

the fourteenth paragraph goes on to direct that, in no event, shall any property be sold to satisfy the bequests and that if no cash is available, the said bequests are void, which would make such an interpretation unreasonable. Even if the bequests were satisfied from the cash on hand at death, such payments would result in the sale of other property to pay the usual administration expenses. Yet the testator expressly reveals his intention that the cash bequests should become void before any property should have to be sold to pay them. His desire to prevent the sale of noncash property was his primary object; payment of the cash bequests was but secondary.

I, therefore, hold that the pecuniary legacies contained in items fifth to thirteenth, both inclusive, have adeemed because of the failure of the fund from which they were directed to be paid, as above set forth. . . .

And now, September 23, 1960, this adjudication is confirmed nisi.